[No. B018647. Second Dist., Div. Three. Oct. 9, 1986.]

RON YATES CONSTRUCTION COMPANY, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.
PAULA OEHLBERG et al., Real Parties in Interest.

338

**COUNSEL**

Stern & Miller, Mark A. Neubauer and Randall S. Rothschild for Petitioner.

No appearance for Respondent.

Arthur Leeds for Real Parties in Interest.

John K. Van de Kamp, Attorney General, and William L. Marcus, Deputy Attorney General, as Amici Curiae on behalf of Real Parties in Interest.

**OPINION**

**ARABIAN, J.—**

### INTRODUCTION

Petitioner Ron Yates Construction Company, a general engineering contractor (petitioner), seeks a writ of mandate directing respondent superior court to vacate its order granting Paula and Terrence Oehlberg (the Oehlbergs) a partial adjudication of issues on petitioner's cross-complaint in which petitioner sought recovery of the reasonable value of labor and ma-

terials provided to the Oehlbergs under a construction contract. The respondent court granted the Oehlberg's partial adjudication of issues on the ground that, although petitioner was properly licensed for certain of the construction work, as a matter of law petitioner did not have the proper license to construct the caisson foundation for the Oehlberg's residence. We grant the peremptory writ of mandate.

## ISSUE

May a general engineering contractor, holding a Class A license from the State of California, contract to build a residence foundation consisting of eight caissons if the work requires "specialized engineering knowledge and skill" (Bus. & Prof. Code, § 7056)?[1] Yes.[2]

## FACTS

Ronald R. Yates has been in the construction business for more than 20 years. He is the president of petitioner, which has been in business for 15 years and specializes in the construction of seawalls, foundations, and septic systems for homes along the seashore in the Malibu area. Since its formation, petitioner has been licensed as a general engineering contractor and has held a Class A license, which requires "specialized engineering knowledge and skill" (§ 7056).

According to Mr. Yates, and other of petitioner's experts, building on sand near the ocean requires the specialized knowledge of a Class A licensee because of the extremely unstable nature of the land and the high water tables. Further, a foundation or a seawall must be anchored into the bedrock many feet below the sand and water. This requires the contractor to be completely familiar with drainage techniques needed to keep the excavation hole free of water.

When Mr. Yates applied to the Contractors State License Board (the Board) for a Class A license for petitioner, he did so only after talking with other contractors who do the same type of work, reading the Board's literature and discussing the matter on the telephone with Board employees. He then traveled to the Board's office in Sacramento for the express purpose of making sure that petitioner obtained the proper contractor's license. In

---

[1] All code section references are to the Business and Professions Code unless otherwise indicated.

[2] In light of this determination, we need not address petitioner's contentions that (1) substantially complied with the licensing statute and (2) the Oehlbergs' motion for summary judgment and for summary adjudication of issues failed to meet the requirements of Code of Civil Procedure section 1008.

Sacramento, the Board licensing officer handling petitioner's application assured him that a company engaged in constructing seawalls and house foundations on the beach should hold a Class A. license.

On July 30, 1982, petitioner entered into a written contract with the Oehlbergs whereby petitioner agreed to build a seawall, septic system and foundation caissons for the Oehlberg's beach-front residence in Malibu, California. The foundation was to consist of eight caissons anchored in bedrock and the seawall was to be similarly anchored by two caissons.

Pursuant to the contract, petitioner commenced work in late August of 1982 and continued working until October of 1982, when the Oehlbergs terminated their contract with petitioner. Although petitioner had substantially completed the project, they refused to pay any sums owing for labor and materials.

In October of 1982, the Oehlbergs commenced the instant action in respondent court, seeking damages for, inter alia, breach of contract. Petitioner cross-complained against the Oehlbergs for, inter alia, the recovery of the reasonable value of labor and materials provided under the construction contract.

Thereafter, the Oehlbergs contacted the Board to determine if petitioner was properly licensed to perform the work in question. The Board responded by formal letter that a Class A licensee could properly contract to build the seawall and septic system, but not the caisson foundation for the residence. According to the Board, only a general building contractor (§ 7057), a Class B licensee, could properly contract for that work.

In November of 1984, the Oehlbergs brought their first motion for summary judgment and for summary adjudication of issues on the cross-complaint on the ground that petitioner was not properly licensed to construct one portion of the work under the contract, the caisson foundation. On November 30, 1984, the Honorable Charles E. Jones denied the motion, holding the issue whether petitioner was properly licensed to construct the foundation raised a triable issue of fact and was therefore not appropriate for summary judgment nor summary adjudication of issues.

Approximately one year later, in November of 1985, after conducting further discovery, the Oehlbergs renewed their motion for summary judgment and for summary adjudication of issues on the same ground. The Honorable Norman L. Epstein heard the motion on January 15, 1986, and held that, as a matter of law, petitioner, a Class A licensee, was not properly licensed

to construct the caisson foundation for the Oehlberg's residence, but was properly licensed to build the seawall and septic system.

Judge Epstein denied the Oehlberg's motion for summary judgment and granted in part their motion for summary adjudication of issues on the ground that, pursuant to section 7031, petitioner was precluded from recovering the value of the labor and materials provided in constructing the Oehlbergs' residence foundation. The court reasoned that a Class B license was required to construct the caisson foundation because it was for "the support, shelter and enclosure of persons, animals, chattels or movable property" (§ 7057) and that it was irrelevant whether such work required the "specialized knowledge and skill" (§ 7056) of the Class A licensee. It is this decision which is the subject of the instant petition for writ of mandate.

## DISCUSSION

The Oehlbergs claim that petitioner is barred by section 7031[3] from collecting compensation for the labor and materials provided in constructing the caisson foundation for their residence because he was not properly licensed.[4]

Section 7031 is part of the Contractors License Law (§ 7000 et seq.) which provides a comprehensive scheme governing contractors doing business in California. (*Asdourian v. Araj* (1985) 38 Cal.3d 276, 282 [211 Cal.Rptr. 703, 696 P.2d 95].) The purpose of section 7031 is to enforce the Contractors' License Law. (*Ibid.*) "That purpose is accomplished by denying a contractor 'access to the courts to recover for the fruits of his labor . . . when he violates the statute.' [Citation.]" (*Ibid.*)

Section 7055 provides: "For the purpose of classification, the contracting business includes any or all of the following branches: (a) General engi-

---

[3]Section 7031 provides: "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract . . . ."

[4]A person who is required to be licensed under the Contractors License Law (§ 7000 et seq.) is defined in section 7026 thereof, as follows: "The term contractor . . . is synonymous with the term 'builder' and . . . is any person, who undertakes to . . . construct, alter, repair, add to . . . any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith. . . . The term contractor includes subcontractor and specialty contractor."

neering contracting. [§ 7056] [¶] (b) General building contracting. [§ 7057] [¶] (c) Specialty contracting. [§ 7058]"[5]

Section 7056 provides: "A *general engineering contractor* is a contractor whose principal contracting business is in connection with *fixed works requiring specialized engineering knowledge and skill, including the following divisions or subjects*: irrigation, drainage, water power, water supply, flood control, inland waterways, harbors, docks and wharves, shipyards and ports, dams and hydroelectric projects, levees, river control and reclamation works, railroads, highways, streets and roads, tunnels, airports and airways, sewers and sewage disposal plants and systems, waste reduction plants, bridges, overpasses, underpasses and other similar works, pipelines and other systems for the transmission of petroleum and other liquid or gaseous substances, parks, playgrounds and other recreational works, refineries, chemical plants and similar industrial plants requiring specialized engineering knowledge and skill, powerhouses, power plants and other utility plants and installations, mines and metallurgical plants, land leveling and earthmoving projects, excavating, grading, trenching, paving and surfacing work and cement and concrete works in connection with the above mentioned fixed works." (Italics added.)

Section 7057 provides in pertinent part: "A *general building contractor* is a contractor whose principal contracting business is in connection with any structure built, being built, or to be built, *for the support, shelter and enclosure of persons, animals, chattels or movable property of any kind,* requiring in its construction the use of more than two unrelated building trades or crafts, or to do or superintend the whole or any part thereof." (Italics added.)

Section 7059 provides, in pertinent part: "The board may adopt reasonably necessary rules and regulations to effect the classification of contractors in a manner consistent with established usage and procedure as found in the construction business, and may limit the field and scope of the operations of a licensed contractor to those in which he is classified and qualified to engage, as defined by Sections 7055, 7056, 7057, and 7058. A licensee may make application for classification and be classified in more than one classification if the licensee meets the qualifications prescribed by the board for such additional classification or classifications."

The position of the Oehlbergs is that residential structures, including their foundations, are specifically covered by section 7057 which defines the type of contractor which may contract in connection with "any structure built,

---

[5]Section 7058, which is not here relevant, defines a specialty contractor.

being built, or to be built, for the support, shelter and enclosure of persons, animals, chattels or movable property of any kind . . . ." Therefore, they conclude that only a Class B licensee could properly contract to build the caisson foundation for their residence.

In support of their argument, the Oehlbergs point to section 830, subdivision (b), of title 16 of the California Administrative Code, which the Board adopted to implement the Contractors' License Law. (See § 7059, *ante*, at p. 343.) It provides: "Contractors licensed in one classification shall be prohibited from contracting in the field of any other classification unless they are also licensed in that classification or are permitted to be so by Section 831 [which section is not here relevant]."

Amicus curiae, the Board, which filed a letter brief with this Court in support of the Oehlberg's position, relies on title 16, section 834, subdivision (a), of the Administrative Code, which states: "A licensee classified as a general engineering contractor shall operate only within those areas defined in Section 7056 of the Code."

Judge Epstein concluded that only a Class B licensee could contract to construct a foundation for a residence, stating, contrary to Judge Jones' earlier holding, that the question is one of law, not of fact and "is not determined by whether the work requires engineering skill or by the testimony of employees of the licensing board as to their interpretation of law." We agree with Judge Epstein that the question is not properly determined by the Board's interpretation of the law, but disagree with his conclusion that the question whether the work requires "specialized engineering knowledge and skill" (§ 7056) is irrelevant.

■ While "'[the] contemporaneous administrative construction of the enactment by those charged with its enforcement and interpretation is entitled to great weight, . . . [s]uch administrative interpretation, however, cannot prevail if erroneous or unauthorized by the applicable laws.'" (*People v. Vis* (1966) 243 Cal.App.2d 549, 557 [52 Cal.Rptr. 527].)

"It is well-established that a regulation cannot restrict or enlarge the scope of a statute. California Government Code sections 11373, 11374; see, also, 55 Ops. Cal. Atty. Gen. 138, 141 (1972)." (59 Ops.Cal.Atty.Gen. 424, 428.)

"Although the board was authorized to adopt rules and regulations 'to effect the classification of contractors,' it is the *statute* which defines a contractor and [even] an administrative ruling contrary to the terms thereof would be ineffective." (*People v. Vis, supra,* 243 Cal.App.2d at p. 557,

italics added; accord 55 Ops.Cal.Atty.Gen. 138, 141 (1972); 51 Ops.Cal.Atty.Gen. 1, 4 (1968).)

Therefore, we must examine the language of section 7056 to determine the legislators' intent. ■ A fundamental rule of statutory construction is that "[l]egislative intent should be determined from the language of the statute." (*People* v. *Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 638 [268 P.2d 723], app. dism. *Western Air Lines, Inc.* v. *California* (1954) 348 U.S. 859 [99 L.Ed.2d 677, 755 S.Ct. 87].) Significance should be given, in doing so, to the section as a whole and to every word, phrase or clause thereof, leaving no part or provision useless or deprived of meaning. (See *ibid.*; *Liptak* v. *Diane Apartments, Inc.* (1980) 109 Cal.App.3d 762, 770 [167 Cal.Rptr. 440].)

The respondent court's construction of section 7056 to render nugatory the phrases, "requiring specialized engineering knowledge and skill" and "including the following divisions or subjects," violates these principles. The court's misinterpretation of the statute was the inevitable result of the manner in which it applied the doctrine of *ejusdem generis* (also known as Lord Tenterden's rule) to construe the statute. As the Court of Appeal explained in *Scally* v. *Pacific Gas & Electric Co.* (1972) 23 Cal.App.3d 806 [100 Cal.Rptr. 501], the rule "states that where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The rule is based on the obvious reason that if the Legislature had intended the general words to be used in their unrestricted sense, it would not have mentioned the particular things or classes of things which would in that event become mere surplusage. The words 'other' or 'any other' following an enumeration of particular classes should be read therefore as *other such like* and to include only others *of like kind or character.*" (*Id.*, at p. 819, italics in original; see *Sears Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters* (1979) 25 Cal.3d 317, 331, fn. 10 [158 Cal.Rptr. 370, 599 P.2d 676], cert. den. (1980) 447 U.S. 935 [65 L.Ed.2d 1130, 100 S.Ct. 3038].)

While the doctrine would be properly applied to certain categories of fixed works enumerated in section 7056 (e.g., "bridges, overpasses, underpasses and *other similar works,*" "pipelines and *other systems for the transmission of petroleum and other liquid or gaseous substances,*" "power plants and *other utility plants and installations*"), the doctrine is not properly applied to limit the categories of fixed works for which a general engineering (Class A) contractor is properly licensed.

■ If the Legislature intended to limit the scope of the general engineering contractor in the manner suggested by respondent court, it could

easily have added the words "or other like fixed works" to the *end* of the statute. As the court stated in *People* v. *Stansberry* (1966) 242 Cal.App.2d 199, 201 [51 Cal.Rptr. 403]: "It must be remembered that the doctrine of *ejusdem generis* 'is only a rule of construction, to be applied as an aid in ascertaining the legislative intent, and that it does not control where *it* clearly appears from the statute as a whole that no such limitation was intended.'"

Section 7056 provides that a "general engineering contractor is a contractor whose principal contracting business is in connection with fixed works requiring specialized engineering knowledge and skill, *including* the following divisions or subjects: . . . ." (Italics added.) On its face the statute does not restrict those divisions or subjects of fixed works requiring the specialized skill of the Class A licensee. The term "includes" is ordinarily a word of enlargement and not of limitation. (*Atlantic Oil Co.* v. *County of Los Angeles* (1968) 69 Cal.2d 585, 596 [72 Cal.Rptr. 886, 446 P.2d 1006]; *People* v. *Western Air Lines, Inc., supra,* 42 Cal.2d at p. 639; *Paramount Gen. Hosp. Co.* v. *National Medical Enterprises, Inc.* (1974) 42 Cal.App.3d 496, 501 [117 Cal.Rptr. 42].)

Section 7056, defining a general engineering contractor, was amended to its present form in 1951 (Stats. 1951, ch. 1606, § 1, p. 3608). Before that amendment, section 7056 read: "A general engineering contractor is a contractor whose principal contracting business is in connection with *fixed works for any or all* of the following divisions or subjects: Irrigation, drainage, water power, water supply, flood control, inland waterways, harbors, railroads, highways, tunnels, airports and airways, sewerage and bridges." (Italics added; see Historical Note, 3C West's Ann. Bus. & Prof. Code (1975 ed.) § 7056, p. 254.)

Section 7057, defining a general building contractor, was not amended in 1951, nor has it been amended at any other time since that section and section 7056 were added to the Business and Professions Code as part of the codification of the Contractors License Law (Stats. 1945, ch. 1159, §§ 2, 3, p. 2207).

We have reviewed the legislative history of section 7056 and have taken judicial notice (Ev. Code, §§ 452, subd. (c), 459)[6] of relevant documents

---

[6]We decline the requests by each of the parties to judicially notice other documents which were not before the trial court and thus are not part of the record on appeal. Since those matters are not of "substantial consequence to the determination of the action," the parties need not be afforded notice and opportunity to be heard in regard to the question whether this Court is required to take judicial notice thereof. (Ev. Code, § 455; Cal. Evidence Code Manual (Cont.Ed.Bar 1966) § 140, p. 395.)

which indicate that the Legislature intended to *expand* the categories enumerated in that statute and to that end modified the words "fixed works" to include any fixed works requiring the "specialized engineering knowledge and skill" of the general engineering (Class A) contractor.

The Legislative Counsel's Digest of Assembly Bill No. 1684 (1951 Reg. Sess.), which proposed the 1951 amendment to section 7056, reads as follows: "Under Business and Professions Code section 7059 [*ante,* at p. 343], the registrar of contractors, with the approval of the Contractors' State License Board,[7] may adopt rules and regulations relating to the classification of contractors and may limit the field and scope of the operations of a licensed contractor to those in which he is classified and qualified to engage, as defined by law. The measure does not amend [section 7059]. *However, as to general engineering contractors engaged in the types of work enumerated by it, this measure expands the field of operation with which such rules or regulations may not interfere.*" (Italics added.)

The Oehlbergs' argument embraces and relies on the Board's official position in regard to this case. However, a review of the record shows the Board (through various of its employees) has taken inconsistent positions on this question in past years, and even presently; on some occasions it has advised prospective licensees that a Class A licensee may contract to construct a residence foundation requiring specialized engineering knowledge and skill, while at other times it has declared that only a Class B licensee may properly contract to build any foundation for a residence. In fact, Mr. Robert Berrigan, a Licensing Deputy for the Board, testified that there is not "a great deal of clarity" on the question.

The inconsistent and illogical position taken by the Board in this case is demonstrated by Board-published study guides for the Class A and Class B contractors state license examinations and by the Board's job descriptions for those licensees. A general engineering (Class A) contractor, is required to have a fundamental knowledge of foundation work; in contrast, a general building (Class B) contractor is not required to have this knowledge and is not tested on foundational work.

According to the Class A study guide, a prospective Class A licensee will be tested on the following information pertaining to foundation work: "Knowledge of procedures for *constructing foundations (e.g.,* footings, pile support and pier foundations). These procedures *include installing foundations at proper elevations,* proper pouring procedures, and proper de-

---

[7] A 1957 amendment to section 7059 (Stats. 1957, ch. 2084, § 21, p. 3704) changed the phrase, "The registrar, with approval of the board, may adopt rules and regulations necessary to effect . . ." to "The board may adopt reasonably necessary rules and regulations to effect . . . ." (See Historical Note, 3C West's Ann. Bus. & Prof. Code (1975 ed.) § 7059, p. 258.)

watering procedures during construction. *Included is the knowledge of different types of foundations and a basic knowledge of the engineering principles used in their design.* Also included is a basic understanding of bearing pressure, including what pressures different types of soils can withstand. This knowledge is at the level of understanding the terminology and procedures of the trade. *It includes the knowledge of the installation and construction sequences.* Also included is the ability to supervise subcontractors' or employees' work in this trade and to judge whether the work has been completed correctly and meets acceptable standards." (Italics added.)

A perusal of the Class B license study guide shows no such knowledge of foundation work is required of a Class B licensee.

The Board's published descriptions of the tasks in which Class A and Class B licensees may engage state that, among other tasks, a Class A licensee must be able to coordinate and/or supervise "foundation work." Class B licensees, however, are not required to do foundation work according to the Board's written task description.

In light of the foregoing discussion, we hold that a general engineering contractor which possesses a Class A license may contract to construct a foundation for a residence if it requires "specialized engineering knowledge and skill" (§ 7056). Therefore, respondent court erred in granting the Oehlbergs a partial adjudication of issues on petitioner's cross-complaint on the ground that, as a matter of law, petitioner was not properly licensed to build the caisson foundation for the Oehlbergs' residence.

If, as we glean from an examination of the record, the Oehlbergs' foundation required the specialized knowledge and skill of a general engineering contractor,[8] then petitioner is not precluded by section 7031 from maintaining an action to recover the reasonable value of the labor and materials provided under the construction contract. That, however, is a question we must leave for determination by the trier of fact.

DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its partial adjudication of issues on petitioner's cross-complaint and

---

[8]Respondent court determined petitioner was properly licensed to build the seawall which was supported by two caissons identical to the eight foundation caissons.

in its place and stead to issue a new and different order denying the Oehlbergs' motion for summary adjudication of issues in its entirety.

Klein, P. J., and Danielson, J., concurred.

On May 19, 1987, the opinion was ordered corrected as printed above due to clerical error. The petition of real parties in interest for review by the Supreme Court was denied December 31, 1986.