[No. A096741. First Dist., Div. Three. Oct. 8, 2002.]

LAWRENCE J. SLATKIN et al., Plaintiffs and Appellants, v. BARRY L. WHITE, Defendant and Respondent.

**COUNSEL**

Law Offices of Gregg J. Goldfarb and Gregg J. Goldfarb for Plaintiffs and Appellants.

James D. Rohde and Cherie G. Porter for Defendant and Respondent.

**OPINION**

**POLLAK, J.**—Plaintiffs appeal from an order denying their application for a preliminary mandatory injunction directing defendant to release a mechanic's lien filed against one of plaintiffs' residences. They contend that defendant is not entitled to file a mechanic's lien because he was not licensed as a contractor at all times during the performance of his work on the property. We conclude that the trial court properly denied the requested injunctive relief.

*Facts*

On April 8, 1998, defendant Barry L. White doing business as Western Estates Construction (White) entered into a contract with Edgar Slatkin to build a residence (the Slatkin residence). On or about July 19, 1999, Edgar Slatkin transferred ownership of the Slatkin residence to Lawrence J. Slatkin. After the completion of the house in April 2001, White recorded a mechanic's lien against the property for monies allegedly owed for the construction of the residence. Thereafter, the Slatkins filed a complaint seeking damages for breach of contract and a mandatory injunction to vacate the mechanic's lien and to prohibit the filing of any further liens on the ground that White did not have a current valid contractor's license from the Contractors' State License Board (CSLB).

White withdrew the original lien, and filed a new lien limiting its amount to the cost of work performed while his contractor's license was not under suspension. He then filed an answer and cross-complaint seeking to foreclose the lien. In his answer, White conceded that his license had been suspended on or about August 27, 2000, because a bonding company had canceled a bond. Nevertheless, he claimed he was entitled to file a mechanic's lien for work he had performed because he had substantially complied with the licensing requirements.

Plaintiffs moved for a preliminary injunction seeking to order the release of the second mechanic's lien. Plaintiffs' contention that White was precluded from filing a lien because he was not licensed throughout the period of construction was evidenced by the certified record of White's licensing history with the CSLB.[1] White opposed the motion, arguing that he had substantially complied with the licensing requirements. He claimed that he was licensed when he signed the April 8, 1998 contract to construct the Slatkin residence. On or about December 27, 2000, more than two years eight months into the project, and with only three months remaining to complete the house, he first received notice from the CSLB that his license had been suspended effective August 27, 2000, four months earlier, because of the cancellation of a bond. He claimed this was the first and only time he was advised that his license was not in effect during the period of construction. Upon receiving notice of the suspension, White immediately attempted to acquire a new bond. While he did not obtain one until June 21, 2001, with

---

[1]As part of their motion papers, plaintiffs requested the superior court to take judicial notice of (1) a two-page "Certification of Records" document from the CSLB; and (2) a 168-page record of White's licensing history from the CSLB. At the superior court hearing, both parties referred to these documents, although the court did not explicitly rule on plaintiffs' request. By our order filed March 11, 2002, we granted plaintiffs' unopposed request to take judicial notice of the documents on this appeal.

an effective date of March 12, 2001, the delay was caused by the fact that nearly all companies that had previously provided general contractor bonds had left the California construction bond market and once he applied for the bond, he was subject to the bonding company's processing time limits. There was nothing he could have done to speed the process along. The CSLB reinstated his license retroactively to March 12, 2001, the maximum period allowed by law, as soon as the bond was filed.

At the hearing on the preliminary injunction, plaintiffs relied on White's admission that despite receiving the December 27, 2000 notice of his license suspension, he continued to work until the end of April. While his license was reinstated when he secured a bond on June 21, 2001, the reinstatement was retroactive only to March 12, 2001, so that there was a gap of approximately three months in which White knowingly worked without a license. White argued in opposition that plaintiffs were not likely to succeed on their claim to remove the lien and that plaintiffs would not be irreparably harmed by the pendency of the lien. The trial court refused to direct White to release the lien, noting that plaintiffs were seeking a preliminary injunction "on limited amounts of evidence." This appeal ensued.[2]

## *Discussion*

"At this initial stage in the proceeding, the scope of our inquiry is narrow. We review an order [denying] a preliminary injunction under an abuse of discretion standard. [Citations.] Review is confined, in other words, to a consideration whether the trial court abused its discretion in ' "evaluat-[ing] two interrelated factors when deciding whether or not to issue a preliminary injunction. The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm the defendant is likely to suffer if the preliminary injunction were issued." ' [Citation.] And although we will not ordinarily disturb the trial court's ruling absent a showing of abuse, an order granting or denying interlocutory relief reflects nothing more than the superior court's evaluation of the controversy on the record before it at the time of its ruling; it is not an adjudication of the ultimate merits of the dispute." (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109 [60 Cal.Rptr.2d 277, 929 P.2d 596].)

"California law . . . offers equitable remedies which the owner [of property] can employ to obtain a speedy hearing on the probable validity of [a

---

[2]After filing their opening brief, plaintiffs posted a surety bond that released the contractor's lien from the property as a matter of law. (Civ. Code, § 3143.) Because the subject property is no longer encumbered by a lien, White filed a motion seeking to dismiss the appeal as moot, which we denied by our order filed on June 10, 2002. In his brief, White also requests that we dismiss the appeal as moot. White does not present any new arguments in his brief in support of his request for dismissal, and we therefore decline to revisit the issue.

mechanic's] lien." (*Connolly Development, Inc. v. Superior Court* (1976) 17 Cal.3d 803, 822 [132 Cal.Rptr. 477, 553 P.2d 637].) After a lien is recorded, an owner can seek a "mandatory injunction ordering the claimant to release the lien." (*Id.* at pp. 822-823.)

■ Section 7031 of the Business and Professions Code[3] provides, in pertinent part, that "no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required . . . without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract, regardless of the merits of the cause of action brought by the person." (§ 7031, subd. (a).) This prohibition applies to a contractor seeking to foreclose his or her mechanic's lien (*Lewis & Queen v. N.M. Ball Sons* (1957) 48 Cal.2d 141, 154-155 [308 P.2d 713]; *Cash v. Blackett* (1948) 87 Cal.App.2d 233, 237 [196 P.2d 585]), and thus, by extension, to an unlicensed contractor's right to file a mechanic's lien.

However, a contractor may avoid the harshness of section 7031 by establishing that he or she has substantially complied with the appropriate licensing requirements. Subdivision (e) of section 7031 provides, in pertinent part: "[T]he court may determine that there has been substantial compliance with licensure requirements under this section if it is shown at an evidentiary hearing that the person who engaged in the business or acted in the capacity of a contractor (1) had been duly licensed as a contractor in this state prior to the performance of the act or contract, (2) acted reasonably and in good faith to maintain proper licensure, and (3) did not know or reasonably should not have known that he or she was not duly licensed."[4]

---

[3] All further statutory references are to the Business and Professions Code, unless otherwise indicated.

[4] At the time of the superior court's decision in August 2001, the exception to the prohibition in section 7031 appeared in former subdivision (d). (Stats. 1994, ch. 550, § 1, pp. 2803-2804.) "When [former] subdivision (d) was first added to section 7031 in 1989, it eliminated altogether the [judicial] doctrine of substantial compliance. [Citation.] In 1991, [the] subdivision . . . was amended to provide that a court could 'determine that there has been substantial compliance with licensure requirements, for purposes of this section, if it is shown at an evidentiary hearing that the person was a duly licensed contractor during any portion of the 90 days immediately preceding the performance of the act or contract for which compensation is sought, that the person's category of licensure would have authorized the performance of that act or contract, and that noncompliance with the licensure requirement was the result of (1) inadvertent clerical error, or (2) other error or delay not caused by the negligence of the person. . . .' [Citations.] [As noted, the] subdivision . . . was amended in 1994, this time to read as quoted in the text." (*ICF Kaiser Engineers, Inc. v. Superior Court* (1999) 75 Cal.App.4th 226, 233, fn. 4 [89 Cal.Rptr.2d 88] (*ICF Kaiser*).) Effective January 1,

Plaintiffs challenge White's ability to establish that he has substantially complied with the licensing requirements as permitted under subdivision (e) of section 7031. Plaintiffs concede that White was duly licensed when he signed the contract at issue, and for purposes of this appeal, they do not contend that White did not act reasonably and in good faith to maintain proper licensure. However, because White admitted that he received a notice of suspension in December 2000, they contend that as a matter of law he cannot establish the third requirement that he did not know that he was not "duly licensed," and therefore, he necessarily has not substantially complied with the licensing requirements.

There is an important uncertainty in the meaning of subdivision (e) of section 7031. The third requirement for establishing substantial compliance with licensure requirements—that the individual did not know or reasonably should not have known that he or she was not duly licensed—has no time referent. Plaintiffs' argument assumes that the statute means that the individual must not have known or had reason to know that he or she was no longer licensed at any time that construction was in progress. However, that is not the only interpretation to which the language is reasonably susceptible. While both subdivisions (a) and (d) of section 7031 are explicit that the general prohibition against the recovery of payment applies if the contractor is not duly licensed "at all times during the performance" of the contract, the same language is not repeated in subdivision (e), although it easily might have been. Another plausible reading of the statutory language is that the individual must not have known of the licensing defect when he or she entered the construction agreement or began the work of construction.

The language of subdivision (e) of section 7031, which was added in 1994, was intended to ameliorate the harsh consequences of the section. (Sen. Com. on Business and Professions, com. on Sen. Bill No. 1844 (1993-1994 Reg. Sess.) as introduced Feb. 24, 1994, p. 2 ["This bill is sponsored by the author (sponsor) in order to remove the overly harsh application of the Contractor's State License Law which, in court actions, denies contractors payment for services rendered, when for clerical or otherwise minor errors, they become unlicensed during the term of a contract"].) As plaintiffs would read the current subdivision, a contractor who continued to perform after learning that his or her license was no longer in effect would automatically lose the right to be compensated—both for work already performed and for work performed while the license was no longer in effect. This result would encourage the contractor to act irresponsibly, contrary to the best interests of both the contractor and the client or property

2002, subdivision (d) was relabeled subdivision (e), without any substantive change. (Stats. 2001, ch. 226, § 1; Cal. Const., art. IV, § 8, subd. (c); Gov. Code, § 9600.)

owner. Assuming that the first two conditions of subdivision (e) have been satisfied and that the contractor did not know and should not have known of the loss of licensure before commencing work, the contractor will have been duly licensed before entering the construction contract and will have acted reasonably to maintain the license, but at some point during the course of performance will have learned that the license was no longer in effect. Under plaintiffs' interpretation, the contractor, in order to preserve his or her right to payment, would be required to shut down the job immediately. Depending upon the nature of the project and the stage of construction at which the discovery occurs, abruptly halting performance could be financially ruinous not only to the contractor but to the client or property owner as well. As section 7031 has been interpreted, a contractor could not rely on any pleas or promises made by the property owner to induce the contractor to remain on the job. (*Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 997-999 [277 Cal.Rptr. 517, 803 P.2d 370]; *K & K Services, Inc. v. City of Irwindale* (1996) 47 Cal.App.4th 818, 827 [54 Cal.Rptr.2d 836].) And, despite the fact that the contractor at all times had acted reasonably and in good faith, he or she would be denied the ability to complete performance and to receive the payment to which he or she would then become entitled. Such an interpretation of subdivision (e) of section 7031 would not be consistent with its evident purpose. The standards included in subdivision (e) "appear to be broad and may, for example, permit the court to ignore the fact that a contractor's license may have been expired for up to two years (contractors are licensed on a biannual basis) and, thus, permit the court to determine that a 'substantial compliance' with state contractor licensing requirements have been satisfied." (Sen. Com. on Business and Professions, com. on Sen. Bill No. 1844 (1993-1994 Reg. Sess.) p. 4.)

■ Under the "plain meaning" rule, "[t]he court looks first to the language of the statute; if clear and unambiguous, the court will give effect to its plain meaning." (*Young v. Gannon* (2002) 97 Cal.App.4th 209, 223 [118 Cal.Rptr.2d 187].) "But the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation]; and

if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

For the reasons indicated above, the more sensible construction of subdivision (e) of section 7031 is that the contractor does not necessarily lose the right to be compensated simply because he or she performs additional work after discovering the loss of licensure, so long as the individual did not have knowledge or notice of the loss before the start of the job. Plaintiffs' reliance on *Pacific Custom Pools, Inc. v. Turner Construction Co.* (2000) 79 Cal.App.4th 1254 [94 Cal.Rptr.2d 756] and *ICF Kaiser, supra,* 75 Cal.App.4th 226, is misplaced. Although the language in the *Turner* opinion implies that substantial compliance under the statute requires that the contractor have no knowledge of the licensing defect during the period of construction, the court repeatedly emphasized that the contractor there did not satisfy the second requirement of subdivision (e) because he had not acted reasonably in maintaining licensure after learning of the defect. (79 Cal.App.4th at pp. 1263, 1265.) The court did not consider separately when the contractor's knowledge of the licensing defect must have been obtained to preclude application of the substantial compliance exception. In *ICF Kaiser*, the contractor failed to meet one of the requirements for licensure at the time it had signed the construction contract and for several months thereafter. (75 Cal.App.4th at pp. 236-241.) The court found that there was substantial compliance and had no occasion to consider the timing issue presented here. (*Ibid.*)

By construing section 7031, subdivision (e) in this manner, we do not indicate that a contractor who learns of the loss of licensure after work has begun necessarily may complete the project as if the license had not been lost. CSLB regulations might be helpful in this area (§ 7008), but factors relevant to the contractor's right to recover would seem to include the reason for which the license was lost, the stage of construction at which the contractor received actual or constructive notice of the loss, and the expressed or apparent desires of the client or property owner. Based upon the record now before the court, it is not possible to reach a conclusive determination of whether White has substantially complied with the licensing requirements, although the limited facts recited above suggest that he did.

In any event, the issue now before the court is whether the superior court abused its discretion by determining that White should not be ordered to release his lien without affording him an evidentiary hearing as provided under subdivision (e) of section 7031. We conclude that the present record does not establish a likelihood that plaintiffs will prevail in defeating

White's mechanic's lien and there has been no abuse of discretion. ▮ "The granting of a mandatory injunction pending trial ' "is not permitted except in extreme cases where the right thereto is clearly established." ' " (*Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618, 625 [43 Cal.Rptr.2d 774].)

### Disposition

The order denying the preliminary injunction is affirmed.

McGuiness, P. J., and Parrilli, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 15, 2003.