[No. B219199. Second Dist., Div. Three. Aug. 19, 2011.]

PACIFIC CAISSON & SHORING, INC., Plaintiff, Cross-defendant and Appellant, v.
BERNARDS BROS. INC., Defendant, Cross-complainant and Respondent.

684

Counsel

Law Offices of Arthur Jarvis Cohen and Arthur Jarvis Cohen for Plaintiff, Cross-defendant and Appellant.

Law Offices of Ted R. Gropman, Ted R. Gropman; Benedon & Serlin, Douglas G. Benedon and Gerald M. Serlin for Defendant, Cross-complainant and Respondent.

**Opinion**

**ALDRICH, J.—**

## INTRODUCTION

Subcontractor Pacific Caisson & Shoring, Inc. (Pacific), sued its general contractor Bernards Bros. Inc. (Bernards) seeking payment for work performed under Pacific's subcontract. The trial court granted Bernards's motion for judgment, ruling, because Pacific did not maintain a class C-12 specialty license, that it was not "a duly licensed contractor" and was hence not entitled to bring its action. (Bus. & Prof. Code, § 7031, subd. (a).)[1] Pacific appeals.

We hold that Pacific was duly licensed because it held a class A general engineering contractor's license when it commenced performance of the subcontract. However, Pacific's class A license lapsed for two and a half months during performance. Where the trial court ruled Pacific was never duly licensed, the court never reached the question whether Pacific nonetheless was entitled to recover because it substantially complied with the Contractors' State License Law (the CSLL) (§§ 7000 et seq., 7031, subd. (e)). Accordingly, we reverse the judgment and remand for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

The evidence is not in dispute. Bernards and Pacific executed a subcontract (the subcontract) in 2002 for Pacific to provide temporary excavation and support work on a project to construct a medical center for the County of Ventura. Under the subcontract documents, Pacific agreed to excavate the site for footings, grade beams, plumbing and utility lines, and other requirements,

---

[1] All further statutory references are to the Business and Professions Code, unless otherwise noted.

backfill and grade, and provide temporary support. Pacific also agreed to prepare and submit "calculations [of] subsurface conditions and geotechnical design parameters, factors of safety, assumptions, design criteria, overstress values and serviceability/deflection tolerances." The subcontract price was $360,000. The prime contract required the bidder for the temporary excavation and support subcontract to maintain a class C-12 specialty earthwork and paving contractor's license (Cal. Code Regs., tit. 16, § 832.12).[2] Pacific held a class A general engineering contractor's license (§ 7056) and a class B general building contractor's license (§ 7057) but never obtained a class C-12 specialty license (§ 7058).

Pacific commenced work under the subcontract at some point before July 29, 2002, and billed for work performed through October 28, 2003. Meanwhile, the Contractors State License Board (the Board) suspended Pacific's licenses on April 1, 2003, for nonpayment of a judgment. During the period the licenses were under suspension, they also expired. The licenses were reinstated on June 25, 2003.

Eventually, Pacific filed this lawsuit seeking $544,567 owed it by Bernards under the subcontract. In its answer to the complaint, Bernards asserted as an affirmative defense that Pacific was not at all times relevant to this action properly licensed to perform the work that is the subject of the subcontract. Bernards also cross-complained alleging Pacific breached its subcontract and seeking reimbursement for monies owed.

Following the presentation of Pacific's case, Bernards moved for judgment (Code Civ. Proc., § 631.8)[3] on the ground that Pacific was precluded by section 7031, subdivision (a) from recovering on its complaint. Bernards based this argument primarily on the fact that Pacific lacked a class C-12 specialty earthwork and paving contractor's license. Secondarily, Bernards

---

[2] The portion of the prime contract entitled "Temporary Excavation and Support Works" stated in relevant part, "1.03 QUALIFICATIONS [¶] A. Temporary Works Designer and Contractor (Contractor): Company specializing in temporary support design and construction with a minimum [10] years documented experience. *A California Contractor's State License Board Class C-12 license is required.*" (Italics added.) The prime contract was incorporated into the subcontract.

[3] Similar to a nonsuit motion under Code of Civil Procedure section 581c, Code of Civil Procedure section 631.8 reads in pertinent part: "After a party has completed his presentation of evidence in a trial by the court, the other party . . . may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party . . . . Such motion may also be made and granted as to any cross-complaint. [¶] . . . [¶] If the motion is granted, unless the court in its order for judgment otherwise specifies, such judgment operates as an adjudication upon the merits."

argued that the license Pacific held was suspended during the period that Pacific was performing its subcontract work and so it was not duly licensed at all times during the performance of the subcontract. (*Ibid.*) Pacific countered that its class A and B licenses were sufficient and that it substantially complied with the CSLL.

The trial court "reluctantly" ruled in favor of Bernards and dismissed the lawsuit for "lack of a C-12 license." The court did not address any other arguments or decide any other issues involving Pacific's complaint.

Pacific moved the trial court for reconsideration arguing that the class C-12 specialty license is subsumed in the class A license. In its opposition, Bernards argued that Pacific's subcontract specified that Pacific must have a class C-12 license not a class A license; and in any event, during the time Pacific was performing work under its subcontract, Pacific's class A license was suspended for nearly three months for failure to satisfy a judgment against it. The trial court granted the motion for reconsideration, reconsidered its prior ruling, and reconfirmed it. The court entered judgment against Pacific pursuant to section 7031, subdivision (a) and awarded Bernards damages in the amount of $206,437.91 on its cross-complaint representing the money it paid to an unlicensed contractor. Pacific filed its timely notice of appeal.

## DISCUSSION

### 1. *Overview of the CSLL.*

The CSLL (§ 7000 et seq.), a comprehensive legislative scheme governing the construction business in California, is " 'designed to protect the public from incompetent or dishonest providers of building and construction services. [Citation.]' [Citation.]" (*Alatriste v. Cesar's Exterior Designs, Inc.* (2010) 183 Cal.App.4th 656, 664 [108 Cal.Rptr.3d 277] (*Alatriste*).) The purpose of section 7031 is to enforce the CSLL. (*Asdourian v. Araj* (1985) 38 Cal.3d 276, 282 [211 Cal.Rptr. 703, 696 P.2d 95], superseded by statute on another point as stated in *Kashani v. Tsann Kuen China Enterprise Co.* (2004) 118 Cal.App.4th 531, 541 [13 Cal.Rptr.3d 174].) To accomplish that aim, section 7031 denies a contractor " 'access to the courts to recover for the fruits of his labor . . . when he violates the statute.' [Citation.]" (*Asdourian v. Araj, supra*, at p. 282.)

Section 7031, subdivision (a) reads in relevant part: "Except as provided in subdivision (e), no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter

without alleging that he or she was a *duly licensed contractor at all times during the performance of that act or contract*, regardless of the merits of the cause of action brought by the person . . . ." (Italics added.)

■ If proper licensure "is controverted," then the contractor must prove licensure by producing a verified certificate of licensure from the Board establishing that the contractor bringing the action was duly licensed in the proper classification at all times during the performance of any relevant contract. (§ 7031, subd. (d).)

■ Our Supreme Court recently addressed the bar to recovery under section 7031, subdivision (a) in *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412 [30 Cal.Rptr.3d 755, 115 P.3d 41] (*MW Erectors*). There, MW Erectors had *no* license when it began performance of two subcontracts—one to perform structural steel work, and another to perform ornamental steel work—and only obtained a C-51 structural steel contractor's license after commencing work. (*Id.* at pp. 419–420.) Referring to the language of section 7031 that " 'no person . . . may bring or maintain any action, or recover in law or equity in any action . . . for the collection of compensation for the performance of any act or contract [requiring] a [contractor's] license' unless he or she alleges (§ 7031(a) . . .), and can prove (§ 7031, subd. (d)), his or her due licensure '*at all times*' during such performance (§ 7031(a))" the Supreme Court determined that "[t]he words 'at all times' convey the Legislature's obvious intent to impose a stiff all-or-nothing penalty for unlicensed work by specifying that a contractor is barred from *all* recovery for such an 'act or contract' if unlicensed *at any time while performing it.*" (*MW Erectors, supra*, at p. 426, some italics added & omitted.) Reading the companion subdivisions of section 7031 together, all of which contain similar "at all times" and "act or contract" language, the court explained, they "make clear the general rule denying recovery of all compensation for work requiring a contractor's license if a valid license was not in place when performance began, *or if licensure lapsed at any time during the work.*" (*MW Erectors, supra*, at p. 428, italics omitted and added.)

The threshold question thus is whether, by virtue of its class A license, Pacific was ever a "duly licensed contractor" as required by section 7031, subdivision (a).

### 2. *Pacific's class A license sufficed.*

■ " ' "The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and

character, understand applicable local laws and codes, and know the rudiments of administering a contracting business. [Citations.]" [Citation.]' " (*Alatriste, supra*, 183 Cal.App.4th at p. 664.)

The Board is authorized to "adopt reasonably necessary rules and regulations to effect the classification of contractors in a manner consistent with established usage and procedure as found in the construction business, and may limit the field and scope of the operations of a licensed contractor to those in which he or she is classified and qualified to engage, as defined by Sections 7055, 7056, 7057, and 7058." (§ 7059, subd. (a).) Licenses "include[] any or all of the following branches: [¶] (a) General engineering contracting. [¶] (b) General building contracting. [¶] (c) Specialty contracting." (§ 7055.)

A class A or general engineering contractor is "a contractor whose principal contracting business is in connection *with fixed works requiring specialized engineering knowledge and skill*, including the following divisions or subjects: irrigation, drainage, water power, water supply, flood control, inland waterways, harbors, docks and wharves, shipyards and ports, dams and hydroelectric projects, levees, river control and reclamation works, railroads, highways, streets and roads, tunnels, airports and airways, sewers and sewage disposal plants and systems, waste reduction plants, bridges, overpasses, underpasses and other similar works, pipelines and other systems for the transmission of petroleum and other liquid or gaseous substances, parks, playgrounds and other recreational works, refineries, chemical plants and similar industrial plants requiring specialized engineering knowledge and skill, powerhouses, power plants and other utility plants and installations, mines and metallurgical plants, *land leveling and earthmoving projects, excavating, grading, trenching, paving and surfacing work and cement and concrete works in connection with the above mentioned fixed works.*" (§ 7056, italics added.) The list of fixed works in section 7056 is not exhaustive. (*Ron Yates Construction Co. v. Superior Court* (1986) 186 Cal.App.3d 337, 345–347 [230 Cal.Rptr. 629] (*Yates*).)

In contrast to a general contractor, "[a] specialty contractor is a contractor whose operations involve the performance of construction work requiring special skill and whose principal contracting business involves the use of specialized building trades or crafts." (§ 7058, subd. (a).) The California Code of Regulations further subdivides specialty contracting work into subclassifications. (Cal. Code Regs., tit. 16, §§ 832.02–832.61.)

As is pertinent here, "[a]n earthwork and paving contractor digs, moves, and places material forming the surface of the earth, other than water, in such a manner that a cut, fill, excavation, grade, trench, backfill, or tunnel (if

incidental thereto) can be executed, including the use of explosives for these purposes. This classification includes the mixing, fabricating and placing of paving and any other surfacing materials." (Cal. Code Regs., tit. 16, § 832.12.)

Pacific argues that its class A general engineering contractor's license sufficed for this project and that the lesser or specialty license would have been superfluous as it is fully encompassed within the class A license requirements. Bernards counters that the prime contract between the county and its engineers required that the subcontractor performing the temporary excavation and support works have a class C-12 specialty license, and where Pacific did not hold a class C-12 license, it was not duly licensed irrespective of Pacific's class A license. We agree with Pacific.

■ " '[T]he interpretation and application of a statutory scheme to an undisputed set of facts is a question of law . . . which is subject to de novo review on appeal . . . .' [Citation.]" (*Cal-Air Conditioning, Inc. v. Auburn Union School Dist.* (1993) 21 Cal.App.4th 655, 667 [26 Cal.Rptr.2d 703].) "A fundamental rule of statutory construction is that '[l]egislative intent should be determined from the language of the statute.' [Citation.] Significance should be given, in doing so, to the section as a whole and to every word, phrase or clause thereof, leaving no part or provision useless or deprived of meaning. [Citations.]" (*Yates, supra,* 186 Cal.App.3d at p. 345.) ■ Moreover, " 'a regulation cannot restrict or enlarge the scope of a statute. [Citations.]' [Citation.] [¶] ■ 'Although the board was authorized to adopt rules and regulations "to effect the classification of contractors," it is the *statute* which defines a contractor and [even] an administrative ruling contrary to the terms thereof would be ineffective.' [Citations.]" (*Id.* at pp. 344–345.)

This court addressed a very similar issue in *Yates* and our opinion provides important guidance here. Yates was a class A licensee, but did not hold a class B license for construction of residences.[4] Yates contracted to build a septic tank, a seawall, and a foundation consisting of eight caissons for a residence along the shoreline in Malibu. (*Yates, supra,* 186 Cal.App.3d at pp. 340–341.) After Yates substantially completed the work, the owners refused to pay and sued him for breach of contract. (*Id.* at p. 341.) At issue was whether Yates could properly build a residence foundation with a class A, but not a class B, license. Yates argued that the work required specialized

---

[4] A class B or general building contractor is a "contractor whose principal contracting business is in connection with any structure built . . . for the support, shelter, and enclosure of persons, animals, chattels, or movable property of any kind, requiring in its construction the use of at least two unrelated building trades or crafts, or to do or superintend the whole or any part thereof." (§ 7057, subd. (a).)

knowledge of a class A licensee because of the unstable nature of the land and the high water tables where the foundation must be anchored to the bedrock. (*Id.* at p. 340.) We agreed with *Yates.* (*Id.* at p. 348.)

We based our reasoning on the statutory language of sections 7056 and 7057 concerning the class A and class B licenses and on the legislative history. (*Yates, supra,* 186 Cal.App.3d at pp. 344–347.) We concluded that while section 7056, defining a general engineering contractor, did not contain a finite list of the categories of fixed works (*Yates, supra,* at pp. 345–347), it modified the type of fixed works by specifying that such works "requir[e] specialized engineering knowledge and skill" (*ibid.*). We also reviewed the test for class A licensees and discovered it included knowledge of foundation work whereas the test for a class B license did not. (*Id.* at pp. 347–348.) Accordingly, we held "that a general engineering contractor which possesses a Class A license may contract to construct a foundation for a residence if it requires 'specialized engineering knowledge and skill' (§ 7056)" and so the trial court erred in ruling that Yates was not properly licensed to build the caisson foundation for the homeowners' residence. (*Id.* at p. 348.) According to *Yates,* a fixed work "requiring specialized engineering knowledge and skill" falls within the scope of work of a class A licensee. (*Id.* at pp. 345–347.)

 Comparing a class A and class C-12 license, "specialized *engineering* knowledge and skill" is not required of the latter. (§ 7058, italics added; see Cal. Code Regs., tit. 16, § 832.12; *People v. Vis* (1966) 243 Cal.App.2d 549, 553 [52 Cal.Rptr. 527] [construction industry embraces numerous specialized crafts requiring certain arts and skills falling in "specialty contractor" classification].) Nowhere in the Board's definition of an earthmoving and paving contractor is specialized engineering knowledge or skill mentioned. Reviewing the Board-published study guides for class A and class C-12 contractors state license examinations, and the Board's job descriptions for these licensees, as we did in *Yates* (*Yates, supra,* 186 Cal.App.3d at pp. 347–348), these publications indicate that although a class A contractor is required to have knowledge of basic engineering principles and seismic safety, shoring and sloping, a class C-12 licensee is not.

Furthermore, class A licensees are permitted to engage in the same work as the class C-12 license. Section 7056 includes in its list of activities of a class A licensee "leveling and earthmoving projects, excavating, grading, trenching, paving and surfacing work and cement and concrete works" when done in connection with fixed works requiring specialized engineering knowledge and skill. (§ 7056.) Thus, although both the class A and class C-12 contractors may dig and pave, only class A licensee may engage in land leveling and

earthmoving, excavation, grading, and trenching when it demands "specialized engineering knowledge and skill." Stated otherwise, a general engineering contractor that possess a class A license may contract to provide temporary excavation and support requiring "specialized engineering knowledge and skill." (§ 7056; see *Yates, supra,* 186 Cal.App.3d at p. 348.)

Comparing Pacific's subcontract to the words of section 7056 and California Code of Regulations, title 16, section 832.12, the subcontract required "specialized engineering knowledge and skill." Pacific was expected to provide "calculations that clearly disclose such information as interpreted subsurface conditions and geotechnical design parameters, factors of safety, assumptions, design criteria, overstress values and serviceability/deflection tolerances." Along with these calculations, Pacific was also to provide temporary support, which is not within the expertise of a class C-12 contractor. The subcontract required of Pacific activities that fall beyond the purview of the class C-12 contractor but within the expertise of the class A licensee. (§ 7056.) Therefore, Pacific's class A license enabled it to provide temporary excavation and support for the hospital project because it required Pacific to utilize specialized engineering knowledge and skill and provide more than those activities falling under the definition of a class C-12 license. (§ 7056.)

■ Bernards argues that *Yates* and other cases Pacific cites did not address the narrow question presented here namely, whether the holder of a class A license was also required to obtain a *class C-12* specialty license, and so Pacific's cases are not authority for a proposition not discussed. (*Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1268 [48 Cal.Rptr.2d 12, 906 P.2d 1112].) But, *Yates* interpreted section 7056 and held that fixed works under that statute are those that require specialized engineering knowledge and skill. Our reading of the class C-12 license in California Code of Regulations, title 16, section 832.12 dovetails with section 7056 and *Yates.* ■ Insofar as a subcontractor is engaged in digging as well as excavating, backfilling, and grading, and providing support in connection with fixed works that require specialized engineering knowledge and skill, a class A license will suffice.

Next, Bernards argues that Ventura County, as a public agency authorized to select which license classification was entitled to perform this project, required Pacific to hold a class C-12 license. As Pacific did not hold the license the county had designated, it was not duly licensed as provided for by the statute.

■ Section 7059 provides in part, "In public works contracts . . . *the awarding authority shall determine the license classification necessary to bid*

*and perform the project.*" (§ 7059, subd. (b), italics added.) This statute was sponsored by the Board "to clarify when contracts could be let to *specialty* contractors where the contract involved *work outside the specialty contractor's license.* [Citation.]" (*M & B Construction v. Yuba County Water Agency* (1999) 68 Cal.App.4th 1353, 1360 [81 Cal.Rptr.2d 231], italics added (*M & B Const.*).)

The authorities upon which Bernards relies are distinguished as they all involve the bidding process. (See, e.g., *M & B Const., supra*, 68 Cal.App.4th at p. 1362 [§ 7059, subd. (b) grants agency the right to consider license classifications in determining whether a bidder is qualified to bid on contract].) Furthermore, *M & B Const.* is distinguished because, as noted, Pacific's subcontract did not involve work outside its contractor's license. (*M & B Const., supra*, at pp. 1360–1361.) In any event, the decision of a public agency goes to its own dealings with the contractor with whom it contracts and has no impact on contractors' dealings with *third parties*. (*Id.* at p. 1362.) Here, based on our holding that a class A license sufficed in this case, it is irrelevant that Pacific did not hold a class C-12 license. The requirement of a C-12 license was located in the prime contract between the County of Ventura and Bernards. Bernards observes that the subcontract contained a provision incorporating the prime contract and reciting that Pacific certified that it is fully familiar with all of the terms, conditions, and obligations of the prime contract. But, the authority of the public agency to select which license classification could perform this project extends only to its dealings with its own contracts. (*Ibid.*)

To summarize, Pacific had a valid California contractor's license when it began work under the subcontract.

### 3. *Trial is necessary to determine whether Pacific substantially complied with the licensing requirement.*

Bernards contends, even if Pacific's class A license was sufficient, that license was suspended and expired during suspension while Pacific was performing its work, with the result that Pacific is precluded from recovering on its subcontract because it was not duly licensed "at all times during the performance of" the subcontract as required by section 7031, subdivision (a) and *MW Erectors, supra*, 36 Cal.4th 412. This issue was raised and argued below. However, because the court ruled against Pacific on the ground it lacked a proper license at all (§ 7031, subd. (a)), the court never addressed the issue of whether Pacific could recover in any event because it was in substantial compliance with the licensing requirement under section 7031, subdivision (e). We conclude that reversal is required to allow Pacific the opportunity to establish it satisfied the elements of substantial compliance.

Pacific entered into its subcontract on April 3, 2002, and performed under that contract in 2002 and 2003. The version of section 7031 in effect at those times "provided that the doctrine of substantial compliance could apply only when, among other things, the contractor, despite *a later lapse in licensure,* 'had been duly licensed as a contractor in this state *prior to the performance of the act or contract*' for which compensation is sought. [Citation.]" (*MW Erectors, supra,* 36 Cal.4th at p. 431, first italics added, citing Stats. 1994, ch. 550, § 1, p. 2803; see also Stats. 2001, ch. 226, § 1, p. 2094.)

■■■ Specifically, at the applicable time, section 7031, former subdivision (e) read in relevant part: "The judicial doctrine of substantial compliance shall not apply under this section where the person who engaged in the business or acted in the capacity of a contractor has never been a duly licensed contractor in this state. However, the court may determine that there has been substantial compliance with licensure requirements under this section if it is shown at an evidentiary hearing that the person who engaged in the business or acted in the capacity of a contractor (1) had been duly licensed as a contractor in this state prior to the performance of the act or contract, (2) acted reasonably and in good faith to maintain proper licensure, and (3) did not know or reasonably should not have known that he or she was not duly licensed." (§ 7031, former subd. (e), as amended by Stats. 2001, ch. 226, § 1, p. 2094; accord, *MW Erectors, supra,* 36 Cal.4th at p. 431.)[5] The elemental requirements of substantial compliance are stated in the conjunctive, indicating the contractor seeking payment must demonstrate it satisfied *all* of the statutory elements to be entitled to recovery. (See *County of Colusa v. California Wildlife Conservation Bd.* (2006) 145 Cal.App.4th 637, 648 [52 Cal.Rptr.3d 1] [where criteria are stated in the conjunctive all of the criteria must be met].) Application of the substantial compliance doctrine is a factual issue. (§ 7031, subd. (e) ["the court may determine that there has been substantial compliance with licensure requirements under this section if it is shown at an evidentiary hearing . . . ."]; *ICF Kaiser Engineers, Inc. v. Superior Court* (1999) 75 Cal.App.4th 226, 236 [89 Cal.Rptr.2d 88].)

The Legislature amended section 7031, subdivision (e) effective 2003 "to provide that one may establish substantial compliance, *despite being unlicensed at some time during performance,* if he or she (1) 'had been duly licensed . . . prior to . . . performance . . . , (2) acted reasonably and in good faith to maintain proper licensure, (3) did not know or reasonably should not have known that he or she was not duly licensed when performance of the act or contract commenced, and (4) acted promptly and in good faith to reinstate

---

[5] Other than redesignating former subdivision (d) as subdivision (e), the 2001 amendments made no "substantive change[s]" to this provision. (*MW Erectors, supra,* 36 Cal.4th at p. 434, fn. 13.)

his or her license upon learning it was invalid.' " (*MW Erectors, supra*, 36 Cal.4th at p. 434, italics added and omitted, citing Stats. 2003, ch. 289, § 1, p. 2484.)[6]

However, as the Supreme Court noted, "[i]n an uncodified section of the 2003 amendments, the Legislature '[found] and declare[d] that the changes made by this act do not constitute a change in, but are declaratory of, existing law.' [Citation.]" (*MW Erectors, supra*, 36 Cal.4th at p. 434, citing Stats. 2003, ch. 289, § 2, p. 2485.) *MW Erectors* determined "the 2003 amendment seems entirely consistent with the prior statutory expression of the substantial compliance doctrine. No reason appears to reject the Legislature's assurance that the amendment merely clarified, and did not change, existing law." (36 Cal.4th at p. 434.)

Two cases involving the doctrine of substantial compliance where the contractor's license lapsed during the performance of the contract are instructive. The contractor in *Slatkin v. White* (2002) 102 Cal.App.4th 963 [126 Cal.Rptr.2d 54], was licensed when he commenced work on the contract. Two

---

[6] The Legislature has been grappling with the substantial compliance doctrine in the construction context. In 1989 the Legislature indicated its displeasure with the judicially developed doctrine of substantial compliance under section 7031 by abrogating the rule. (*MW Erectors, supra*, 36 Cal.4th at p. 429 & fn. 8, citing Stats. 1989, ch. 368, § 1, p. 1509.) By 2003, the Legislature had become concerned because "the lack of a substantial compliance defense exposes good, honest contractors to potentially devastating financial losses simply because the contractor was unaware that his/her license had temporarily lapsed. The lapse could occur for a number of innocent reasons that are unknown and beyond the control of the contractor. [¶] Currently, a lapse of license for even a single day could lead to the owner's recovery of 100 percent of the compensation paid to the contractor for work performed." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1386 (2003–2004 Reg. Sess.) as amended July 23, 2003, p. 2.) Assembly Bill No. 1386 (2003–2004 Reg. Sess.) was introduced to "soften[]" "the flat no-substantial-compliance rule . . . to allow contractors to establish substantial compliance in certain circumstances, and therefore to recover compensation, despite technical lapses in licensure. [Citation.]" (*MW Erectors, supra*, 36 Cal.4th at p. 429, fn. 8.) The comment specified that while "[c]ontractors who know they are unlicensed when they commence work on a project would not be able to assert a substantial compliance defense . . . contractors who commence work in good faith and later learn of a lapse of license, and then act promptly to reinstate their license, could defend an action by the owner to recover compensation if they meet the other substantial compliance tests." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1386, *supra*, at pp. 2–3.)

The 2003 amendments sought, among other things, to "[e]xpand[] the definition of activities not deemed as 'substantial compliance' to include performance of work with an inactive license, a revoked license, or a license suspended by disciplinary action of the Contractors' State License Board . . . ." (Sen. Rules Com., Off. of Sen. Floor Analyses, Summary of Assem. Bill No. 1386 (2003–2004 Reg. Sess.) as amended July 23, 2003, p. 1.) Comments showed that to defend against a court action to disgorge compensation for work performed, the contractor must demonstrate that it was not responsible for the lapse in licensure and that it acted in good faith and promptly moved to reinstate the license. (Assem. Com. on Judiciary, Analysis of Assem. Bill. No. 1386 (2003–2004 Reg. Sess.) as amended Apr. 21, 2003, p. 2.)

years into the project, he received notice that his license had been suspended four months earlier because of the cancellation of a bond. (*Id.* at p. 966.) The contractor's failure to obtain reinstatement of the license for six months after the notice of suspension was the fault of the construction bond market. (*Id.* at p. 967.) Under those facts, the contractor demonstrated substantial compliance. (*Id.* at p. 971.)

In *Pacific Custom Pools, Inc. v. Turner Construction Co.* (2000) 79 Cal.App.4th 1254 [94 Cal.Rptr.2d 756], the appellate court affirmed the finding of no substantial compliance, not because of the lapse, but because of a lack of good faith. There the evidence showed, although licensed before commencing work on the project (*id.* at pp. 1258, 1262), that the contractor knew its license was suspended during performance for failure to file a judgment bond (*id.* at p. 1264). Also, the contractor's renewal application was untimely and its check was dishonored. (*Ibid.*) Such facts did not indicate that the contractor acted reasonably or in good faith to maintain licensure or that it did not know or reasonably should not have known that it was not duly licensed. (*Ibid.*)

▪ Applying these principles here, Pacific was duly licensed as a contractor in this state prior to the performance of the act or contract. As we have already discussed, Pacific held a valid class A license until April 1, 2003. That license sufficed for this subcontract. Thus, Pacific held a valid California contractor's license prior to performance of the subcontract.

However, as the result of its ruling granting judgment based on subdivision (a) of section 7031, the trial court never reached the doctrine of substantial compliance. The record is devoid of *facts* indicating whether Pacific (1) acted reasonably and in good faith to maintain proper licensure, (2) did not know or reasonably should not have known that he or she was not duly licensed, and (3) acted promptly and in good faith to reinstate his or her license upon learning it was invalid. (§ 7031, subd. (e).) Stated differently, the record does not support the trial court's judgment pursuant to Code of Civil Procedure section 631.8. This case must be reversed for trial of the substantial compliance doctrine under section 7031, subdivision (e). Accordingly, that portion of the judgment ordering Pacific to return the $206,437.91 Bernards had paid it must also be reversed.[7]

---

[7] We have considered and rejected the remaining arguments raised in the briefs on appeal and on rehearing.

## DISPOSITION

The judgment is reversed and remanded to the trial court in accordance with the opinions expressed herein. Appellant to recover costs on appeal.

Croskey, Acting P. J., and Kitching, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 30, 2011, S196749.