Filed 5/18/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| PACIFIC CAISSON & SHORING, INC., | B248320 |
| Plaintiff, Cross-defendant and Appellant, | (Los Angeles County Super. Ct. No. BC343834) |
| v. | |
| BERNARDS BROS. INC., | |
| Defendant, Cross-complainant and Respondent. | |

 

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge. Affirmed.

Law Offices of Arthur Jarvis Cohen and Arthur Jarvis Cohen for Plaintiff, Cross-defendant and Appellant.

Law Offices of Ted R. Gropman and Ted R. Gropman for Defendant, Cross-complainant and Respondent.

————————

INTRODUCTION

The Contractors' State License Board (the Board) suspended the license of Pacific Caisson & Shoring, Inc. (Pacific) as the sanction for the failure to notify the Board that a judgment had been entered against Pacific. (Bus. & Prof. Code, § 7071.17.)[1] Thereafter, the trial court found that Pacific did not substantially comply with the requirement that the contractor be licensed while performing work. (§ 7031, subd. (e).) Pacific appeals contending that the judgment was not "substantially related" to its "construction activities" within the meaning of section 7071.17, and so Pacific's license should not have been suspended. We hold that the judgment falls within the ambit of section 7071.17, and affirm the judgment against Pacific.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The previous trial involving these parties*

Much of the factual predicate is set forth in our earlier published opinion, *Pacific Caisson & Shoring, Inc. v. Bernards Bros. Inc*. (2011) 198 Cal.App.4th 681 (*Pacific Caisson*). Pacific entered into a subcontract (the subcontract) with Bernards Bros. Inc. (Bernards) to provide temporary excavation and support work on a project to build a medical center for the County of Ventura. (*Id*. at p. 685.)

Pacific filed this lawsuit against Bernards for compensation for work performed. Bernards raised as an affirmative defense that Pacific was not "at all times" properly licensed, and cross-complained seeking reimbursement for money owed. (*Pacific Caisson*, *supra*, 198 Cal.App.4th at pp. 686-687.) The prime contract required the subcontractor to maintain a Class C-12 specialty earthwork and paving contractor's license. Pacific held Class A and Class B contractor's licenses but never obtained a Class C-12 specialty license. (*Id*. at p. 686.)

We reversed the judgment in favor of Bernards. We held that Pacific was "duly licensed" (§ 7031, subd. (a)) in the sense that its Class A license sufficed. (*Pacific Caisson*, *supra*, 198 Cal.App.4th at p. 685.) However, because that Class A license was

---

[1] All further statutory references are to the Business and Professions Code.

2

suspended for a two-month period, Pacific was not licensed "at all times" during performance of the subcontract and so we remanded the case for trial on whether Pacific nonetheless substantially complied with the licensing requirement pursuant to section 7031, subdivision (e) so as to be entitled to recover from Bernards despite the lapse in licensure. (*Pacific Caisson*, *supra,* at pp. 693 & 696.)

2. *Trial on remand*

The following was adduced on retrial. Pacific commenced work under the subcontract on April 3, 2002 and finished on October 28, 2003. While Pacific was performing under the subcontract, the Board suspended Pacific's license on April 1, 2003. The suspension was lifted after 77 days.

The facts giving rise to the suspension are undisputed. Jerry McDaniel and his wife Delma[2] own two corporations, Pacific and Gold Coast Drilling, Inc. Formed in 1989, Gold Coast rents equipment to Pacific and other companies. Gold Coast is a "union shop" that also does "union jobs" for Pacific. Jerry is the Responsible Managing Officer (RMO) and the sole qualifier for both companies' licenses, meaning his knowledge and experience meet the prerequisites for the licenses for Pacific and Gold Coast. (§ 7068, subds. (a) & (b)(3).) Delma performs all of the administrative tasks and maintains the companies' licenses.

Gold Coast was sued by American Benefit Plan Administrators, Inc. (ABPA),[3] the agent and fiduciary for Gold Coast's union's pension, to recover employee benefits Gold Coast owed under its collective bargaining agreement. The lawsuit was resolved by a

---

[2]     For clarity, we refer to the McDaniels by their first names and mean no disrespect thereby.

[3]     ABPA is the administrator, agent, and fiduciary for the Laborers Health and Welfare Trust Fund for Southern California; Construction Laborers Pension Trust for Southern California; Construction Laborers Vacation Trust for Southern California; Construction Laborers Vacation Trust for Southern California; Laborers Training and Re-Training Trust Fund for Southern California; Fund for Construction Industry Advancement; Center for Contract Compliance; and Laborers Contract Administration Trust Fund for Southern California.

3

stipulated judgment entered on June 20, 2000, under which Gold Coast agreed to pay a discounted sum on a monthly basis and to remain current on its regular employee benefit contributions (the stipulated judgment). As President of Gold Coast, Delma signed the stipulated judgment and informed Jerry.

After making the September 2001 installment, Gold Coast made no more payments. Gold Coast learned it was in default under the stipulated judgment in December 2001. In February 2002, ABPA notified Gold Coast that it would begin collecting the full amount under the stipulated judgment's acceleration clause. Gold Coast did not dispute the amount owed but, as it lacked the funds, it made no further payments.

On March 26, 2003, approximately 11 months after Pacific commenced work on the subcontract with Bernards, and over two years after the stipulated judgment was entered, ABPA notified the Board of the unsatisfied stipulated judgment.

On April 3, 2003, the Board wrote to Gold Coast stating it was "notified that there is a construction related judgment against you." The letter explained, because Gold Coast failed to notify the Board within 90 days of the date of the judgment, that its license would automatically be suspended effective April 1, 2003 under section 7071.17. The Board also suspended Pacific's license as an associated license of Gold Coast. (§ 7071.17, former subd. (j).)[4]

Upon receiving the suspension notice, Jerry contacted his attorney who negotiated a resolution with ABPA. On June 6, 2003, Gold Coast and ABPA entered into a stipulation under which Gold Coast agreed to pay a full satisfaction of the judgment by November 30, 2003. The Board lifted the suspension of both licenses on June 17, 2003, after receiving the ABPA's notice of the settlement.

---

[4] Under subdivision (j) of section 7071.17, the Board is required to suspend the license of any licensee who shares qualifying personnel with a judgment debtor licensee who has not satisfied a final judgment, until the judgment debtor's license is reinstated or the qualified person disassociates him or herself from the suspended licensed entity.

Since 2003, subdivision (j) has been amended. None of the amendments is relevant to this appeal.

4

3. *The trial court's ruling*

On this evidence, the trial court ruled that Pacific did not qualify for the substantial compliance exception because it failed to demonstrate, under the second prong of the exception, that it "acted reasonably and in good faith to maintain proper licensure." (§ 7031, subd. (e).) The court reasoned that Jerry, as RMO for both companies, was responsible for assuring full compliance with the laws concerning construction operations. Section 7071.17, subdivision (b) obligated Gold Coast to report the unsatisfied stipulated judgment within 90 days. The licenses' suspensions were caused by the McDaniels' failure to notify the Board of Gold Coast's unsatisfied stipulated judgment. The court found that the reason the McDaniels failed to report the unsatisfied stipulated judgment to the Board was either because they knew that the licenses would be suspended or because of an ignorance of the law. The court found the first explanation was not in good faith and the second was not reasonable given the McDaniels' long experience in the contracting business. Judgment was entered awarding $206,437.91 plus costs to Bernards on its cross-complaint. Pacific timely appealed.

DISCUSSION

Section 7031 precludes a contractor from maintaining any action to recover compensation for the performance of work requiring a license unless it was "a duly licensed contractor at all times during the performance of that" work. (§ 7031, subd. (a).)

Despite this broad forfeiture rule, contractors may nonetheless recover compensation by establishing that they substantially complied with this licensing requirement in accordance with subdivision (e) of section 7031. To bring itself within this exception, a contractor must show at an evidentiary hearing, despite being unlicensed at some time during performance, that the contractor, "(1) had been duly licensed . . . prior to . . . performance . . . (2) acted reasonably and in good faith to maintain proper licensure, (3) did not know or reasonably should not have known that he or she was not duly licensed when performance of the act or contract commenced, and (4) acted promptly and in good faith to reinstate his or her license upon learning it was

5

invalid." (§ 7031, subd. (e); *Pacific Caisson*, *supra*, 198 Cal.App.4th at pp. 694-696.)[5] As the exception is stated in the conjunctive, "the contractor seeking payment must demonstrate it satisfied *all* of the statutory elements to be entitled to recovery." (*Pacific Caisson*, *supra*, at p. 694.)

While application of the substantial compliance exception is a question of fact (§ 7031, subd. (e); *ICF Kaiser Engineers, Inc. v. Superior Court* (1999) 75 Cal.App.4th 226, 236), "[c]onstruction of a statute is a question of law which appellate courts review de novo" (*City of Carson v. City of La Mirada* (2004) 125 Cal.App.4th 532, 540). The trial court found that Pacific did not comply with the second prong of the substantial compliance exception because Pacific did not "act[] reasonably and in good faith to maintain proper licensure." (§ 7031, subd. (e).)

1. *Gold Coast was obligated to notify the Board of the unsatisfied stipulated judgment*.

The RMO is responsible for securing compliance with the licensing laws and the rules and regulations of the Board. (§ 7068.1.) Among the many acts necessary to

---

[5] At the time of the relevant acts and omissions in this case, the substantial compliance exception read: "The judicial doctrine of substantial compliance shall not apply under this section where the person who engaged in the business or acted in the capacity of a contractor has never been a duly licensed contractor in this state. However, the court may determine that there has been substantial compliance with licensure requirements under this section if it is shown at an evidentiary hearing that the person who engaged in the business or acted in the capacity of a contractor (1) had been duly licensed as a contractor in this state prior to the performance of the act or contract, (2) acted reasonably and in good faith to maintain proper licensure, and (3) did not know or reasonably should not have known that he or she was not duly licensed. Subdivision (b) of Section 143 does not apply to contractors subject to this subdivision." (§ 7031, former subd. (e).)

The Legislature amended section 7031, subdivision (e) in 2003, effective January 1, 2004, by among other things, adding the fourth prong. (*Pacific Caisson*, *supra*, 198 Cal.App.4th at pp. 694-695, citing *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc*. (2005) 36 Cal.4th 412, 434, citing Stats. 2003, ch. 289, § 1.) However, as we explained in our first opinion, " '*the amendment merely clarified, and did not change, existing law*.' [Citation.]" (*Pacific Caisson*, *supra*, at p. 695, italics added.)

maintain licensure, is alerting the Board to any qualifying unsatisfied judgments imposed on the licensee. (§ 7071.17, former subd. (b).)[6] The failure to notify the Board within 90 days of the judgment results in an automatic suspension of the license. (*Ibid.*) Even if a contractor informs the Board of a judgment, it must still file a bond with the Board sufficient to guarantee payment of all unsatisfied judgments, "as a condition to the continual maintenance of the license." (*Ibid*.) The automatic suspension of Gold Coast's license caused the suspension of Pacific's license because Jerry is the RMO qualifying for both companies' licenses. (*Id*., subd. (j).)

Pacific challenges the applicability of section 7071.17 to this case.

a. *The stipulated judgment was the type of judgment contemplated by section 7071.17.*

Pacific does not dispute that Gold Coast failed to notify the Board of the June 2000 stipulated judgment. Instead, Pacific contends that the stipulated judgment was not the type of judgment contemplated in section 7071.17.

Subdivision (a) of section 7071.17 lists the unsatisfied final judgments that fall within the statute's ambit. They are judgments against the contractor for the refusal or failure "to pay a contractor, subcontractor, consumer, materials supplier, or *employee*."

---

[6]     Section 7071.17, former subdivision (b), in effect from 1998 through 2003, read: "the licensee shall notify the registrar in writing of *any entered and unsatisfied judgments within 90 days from the date of judgment. If the licensee fails to notify the registrar in writing within 90 days, the license shall be automatically suspended on the date that the registrar is informed*, or is made aware of the unsatisfied judgment. The suspension shall not be removed until proof of satisfaction of judgment, or in lieu thereof, a notarized copy of an accord is submitted to the registrar. If the licensee notifies the registrar in writing within 90 days of the date of judgment of any entered and unsatisfied judgments, *the board shall require as a condition to the continual maintenance of the license* that the licensee file or have on file with the board a judgment bond sufficient to guarantee payment of an amount equal to the unsatisfied judgment or judgments. *The licensee has 90 days from date of notification by the board to file the bond or at the end of the 90 days the license shall be automatically suspended*. The licensee may provide the board with a notarized copy of any accord, reached with any individual holding an unsatisfied final judgment, to satisfy a debt in lieu of filing the bond." (Italics added.)
      None of the subsequent amendments to this statute is relevant to this appeal.

7

(§ 7071.17, subd. (a), italics added.) Pacific contends that the stipulated judgment was not a judgment for the failure "to pay employees for any work performed." Yet, section 7071.17, subdivision (a) is not limited to judgments for back pay. The payment of employee wages is a condition of a contractor's license. (§ 7071.5, former subd. (c) [requiring contractor's bond "for the benefit of," among others, any "employee of the licensee damaged by the licensee's failure to pay wages."].)[7] The term "wages" includes benefits to which employees are entitled as a part of compensation, vacation and sick pay, and deferred compensation such as pension and retirement benefits. (*Brown v. Superior Court* (2011) 199 Cal.App.4th 971, 994; *People v. Alves* (1957) 155 Cal.App.2d Supp. 870, 871-872 [payments to a health or welfare fund under a collective bargaining agreement are wages].) Therefore, a judgment for the failure to pay pension and other benefits is a judgment for the failure to pay "wages" to employees, and thus falls within the reporting requirement of section 7071.17 as the failure to pay an employee. This is so irrespective of whether it was the employees or the employees' agent and fiduciary, i.e., the pension benefit trust fund, who sued to collect those benefits.

Pacific next cites section 7071.17, subdivision (e) which clarifies that section 7071.17 applies *only* to unsatisfied judgments that are "*substantially related to the construction activities* of a licensee licensed under this chapter, or to the qualifications, functions, or duties of the license." (§ 7071.17, subd. (e), italics added.) Pacific argues that failure to pay union benefits to a union trust fund under a collective bargaining agreement is not substantially related to construction activities or to the qualifications, functions, or duties of the contractor's license.

On the contrary, the Board considers payments of pension benefits to employees to be "substantially related to the construction activities of a licensee." The reference book, available to contractors, explains with respect to section 7071.17, subdivision (e) that the Board "broadly interprets this section of law to mean that if the judgment relates to your *construction business in any way*, *it is considered construction-related*. It does

---

**7** After 2008, section 7071.5 subdivision (c) became subdivision (d).

not mean that you had to necessarily contract with the judgment creditor to build something. If you did not pay your office rent, your office utility bills, your material supplier, subcontractor, employee, or any other bill incurred by your business, [the Board] will consider it construction-related. *Very few judgments received by* [*the Board*] *are not construction-related.* If you feel confident that your judgment is not construction-related, you should provide [the Board] with documentation that will support your statement." (Cal. Contractors License Law & Reference Book (2015 ed.) § 1, The California Contractor License, ch. 2, pp. 33-34, italics added.)

"We give 'great weight' to 'contemporaneous administrative construction of a statute by an administrative agency charged with its enforcement and interpretation' " (*First Bank v. East West Bank* (2011) 199 Cal.App.4th 1309, 1315) unless clearly erroneous or unauthorized (*Munroe v. Los Angeles County Civil Service Com.* (2009) 173 Cal.App.4th 1295, 1303). In this case, we defer to the Board's interpretation of section 7071.17 because the Board was the sponsor of the bill enacting that law. (Sen. Com. com on Bus. & Prof. SB 1061, as introduced Feb. 24, 1995, p. 2; Stats. 1995, ch. 467, § 6.) Based on the Board's interpretation, the payment of employee pension benefits falls within Gold Coast's construction business. Therefore, the stipulated judgment for the nonpayment of pension benefits is "an unsatisfied final judgment that is substantially related to the construction activities of a licensee licensed under this chapter, or to the qualifications, functions, or duties of the license" pursuant to section 7071.17, subdivision (e).[8]

It makes no difference to the outcome that Gold Coast is an equipment supplier and not a general contractor, Pacific's contention to the contrary notwithstanding. Gold Coast is a licensee under the Contractor's State Licensing Law and its employees, whose benefits were the subject of the stipulated judgment, did "union jobs" for Pacific.

---

[8]     Pacific's assertion is unavailing that the Board never made a "finding" that the stipulated judgment fell within the meaning of section 7071.17. ABPA attached a copy of the stipulated judgment to its letter notifying the Board, and so the Board implicitly considered that document when it suspended Gold Coast's license.

For the foregoing reasons, the stipulated judgment falls within the ambit of section 7071.17.

b. *The stipulated judgment was unsatisfied.*

Pacific next contends "at no time" was there an "unsatisfied final judgment" as that term is used in section 7071.17. It first insists that negotiations were ongoing and partial payments were made, with the result that it was not unsatisfied until March 26, 2003, which is when ABPA notified the Board. However, Gold Coast was obligated to notify the Board as soon as the stipulated judgment was entered. The version of section 7071.17 in effect at the time Gold Coast entered into the stipulated judgment required notification to the Board of "any entered and unsatisfied judgments within 90 days *from the date of judgment*." (§ 7071.17, former subd. (b), italics added.) The Board made that clear to Gold Coast in its letter notifying the contractor of the automatic suspension. Likewise, the statute's current version requires notification of "any unsatisfied final judgment imposed on the licensee." (§ 7071.17, subd. (b).) As soon as the stipulated judgment was entered, it was "imposed" and "unsatisfied," regardless of whether Gold Coast thereafter made installment payments.

Gold Coast also suggests that the stipulated judgment was not "final." However, "[a] stipulated judgment is as conclusive as to the matters in issue it determines as a judgment after trial." (*Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1507.)

To summarize, the stipulated judgment was an unsatisfied final judgment within the meaning of section 7071.17, notwithstanding Gold Coast made payments through September 2001. Under section 7071.17, subdivision (b), Gold Coast was obligated to alert the Board of the stipulated judgment. The contractor's failure to notify the Board caused the automatic suspension of both Gold Coast's and Pacific's licenses when the Board learned of the unsatisfied stipulated judgment. Thus, there was a lapse in licensure during the time Pacific was performing under its subcontract with Bernards in violation of section 7031, subdivision (a).

10

2. *The evidence supports the trial court's finding Gold Coast did not "act*[] *reasonably and in good faith" to maintain its license*.

Having concluded that Gold Coast was obligated to notify the Board of the stipulated judgment and failed to do so, we turn to Pacific's contention that the trial court erred in finding that Gold Coast did not satisfy the second prong of the substantial compliance exception to the licensure requirement because it did not "act[] reasonably and in good faith to maintain proper licensure." (§ 7031, subd. (e)).

The evidence supports the trial court's finding that Gold Coast did not act reasonably and in good faith. Had Gold Coast notified the Board of the stipulated judgment in 2000, as it was required to do, it could have avoided the suspension by posting the appropriate bond. (§ 7071.17, subd. (b).) If the McDaniels' failure to notify the Board was the result of ignorance of the notification requirement, then they acted unreasonably. The McDaniels have been in the contracting business for decades and in any event, they are presumed to know the law's requirements. (*Alatriste v. Cesar's Exterior Designs, Inc*. (2010) 183 Cal.App.4th 656, 665.) If the McDaniels did not think the stipulated judgment was substantially related to Gold Coast's construction activities, such as would trigger the notification requirement, they were obligated to provide the Board with support for their position (Cal. Contractors License Law & Reference Book, *supra*, § 1, ch. 2, p. 34), not merely to ignore the statute. Their failure to notify the Board on that ground would likewise be unreasonable. Lastly, if the McDaniels did not notify the Board for fear the licenses would be suspended, then they did not act in good faith. The substantial compliance exception to the forfeiture rule is "extremely narrow" and applies "only where a contractor was without a license owing to circumstances truly beyond his control." (*Construction Financial v. Perlite Plastering Co*. (1997) 53 Cal.App.4th 170, 182.)

Pacific contends it acted in good faith but "simply did not have the financial ability to pay the stipulated judgment." Pacific argues that the policy behind the forfeiture of section 7031 is to protect the public from unscrupulous and incompetent contractors whereas Pacific was not unscrupulous, just broke. (*Hydrotech Systems, Ltd.*

11

*v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995.) However, the purpose of the forfeiture statute is not solely to weed out unprincipled contractors, but also to assure that contractors "understand applicable local laws and codes, and know the rudiments of administering a contracting business." (*Ibid.*) The statutory disallowance of claims for payment by unlicensed subcontractors reflects a longstanding policy. (*Id*. at pp. 998-999.) Section 7031 "*applies despite injustice to the unlicensed contractor.*" (*Hydrotech Systems, Ltd. v. Oasis Waterpark*, *supra*, at p. 995, italics added.) Section 7031 " ' "represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties . . . .*" ' " (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc*., *supra*, 36 Cal.4th at p. 423.)

Pacific next argues the second prong of the substantial compliance exception "pertains to post-suspension conduct *prior to learning of a suspension* and not to pre-suspension conduct." (Italics added, italics omitted.) It is not immediately clear what Pacific means by this contention. The phrase "acted reasonably and in good faith *to maintain* proper licensure" (§ 7031, subd. (e), italics added) pertains to conduct *prior to suspension*. "Maintain" means to "continue; . . . hold or preserve . . . keep in existence or continuance; keep in force; keep in good order . . . ." (Black's Law Dict. (6th ed. 1990) p. 953, col. 2.) By contrast, prong four, "acted promptly and in good faith to *reinstate* his or her license upon learning it was invalid" (§ 7031, subd. (e), italics added), clearly relates to post-suspension conduct. At issue here was Gold Coast's failure to act reasonably to *maintain* its license by causing its suspension.[9]

Finally, Pacific insists that it satisfied the substantial compliance exception's fourth prong because it acted promptly and in good faith to reinstate its license upon learning of the suspension. Unfortunately, Pacific must satisfy every prong of the substantial compliance exception; it is not enough to satisfy only two. (*Pacific Caisson*, *supra*, 198 Cal.App.4th at p. 694.)

---

[9] See footnote 5, *ante*.

DISPOSITION

The judgment is affirmed.  Each party to bear its own costs.

**CERTIFIED FOR PUBLICATION**


ALDRICH, J.


We concur:



EDMON, P. J.



KITCHING, J.