Filed 11/20/25  Pacific Carpets v. 2525 Main Apartment CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| PACIFIC CARPETS, LLC, | |
| Plaintiff and Appellant, | G064438 |
| v. | (Super. Ct. No. 30-2022-01245791) |
| 2525 MAIN APARTMENT, LP, et al., | |
| Defendants and Respondents. | O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, John C. Gastelum, and Richard J. Oberholzer (Retired judge of the Kern Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.), Judges. Affirmed.

Lanak & Hanna and Mac W. Cabal for Plaintiff and Appellant.

Pierce Kavcioglu Espinosa & Cesar, Tyler J. Cesar, Armenak Kavcioglu, and Aren Kavcioglu for Defendants and Respondents.

\* \* \*

This appeal concerns the application of California's strict contractor licensing laws to a subcontractor that changed its business form during a construction project. Pacific Carpets, Inc. (the Corporation), which is not a party to the instant appeal, executed a subcontract for certain work and was a licensed contractor at the time. Plaintiff Pacific Carpets, LLC (the LLC) then performed the subcontracted work. Defendant 2525 Main Apartment, LP (2525 Main) paid over $2 million to the LLC for its work.

After a payment dispute arose between the parties, the LLC filed a complaint against 2525 Main; Panku, Inc.; ASD Capital Management, LP; and Assured Management, LLC (collectively defendants) to recover additional compensation. In response, 2525 Main filed a cross-complaint seeking to disgorge the money it had paid to the LLC. Defendants also filed a motion for summary judgment, arguing the complaint was barred under Business and Professions Code section 7031, subdivision (a)[1] because the LLC did not hold a valid contractor's license for the entire period of its work.

The court granted defendants' summary judgment motion and agreed the complaint was barred under section 7031, subdivision (a). The court also found the LLC did not qualify for any statutory exception and granted summary adjudication on the cross-complaint's disgorgement cause of action, requiring the LLC to return the compensation it had received.

The LLC appeals from a judgment entered after the court's summary judgment ruling and raises three arguments on appeal. First, the LLC contends the license held by the Corporation automatically transferred to the LLC. Second, assuming a lapse in licensure, the LLC argues there are

---

[1] All further statutory references are to the Business and Professions Code unless otherwise stated.

2

triable issues of material fact as to whether it satisfied the substantial compliance exception under section 7031, subdivision (e). Finally, the LLC claims there are triable issues of material fact as to whether it is protected by the safe harbor rule under section 7141.5.

We find no merit in the LLC's arguments and affirm the judgment.

## STATEMENT OF FACTS

### I.

### THE SUBCONTRACT AGREEMENT

In October 2019, the Corporation entered into a subcontract agreement with 2525 Main to furnish and install flooring and countertops for an apartment building (the Project). At the time, the Corporation held a contractor's license issued by the California Contractors State License Board (CSLB).

### II.

### CORPORATE CONVERSION OF THE LLC'S PREDECESSOR

In December 2020, the Corporation began the process of converting to a limited liability company by filing a conversion form with the California Secretary of State. In January 2021, a Delaware limited liability company was formed. A few days later, a California limited liability company filed a "Certificate of Conversion" with the California Secretary of State. As a result, the California limited liability company converted to a Delaware limited liability company—the LLC in the instant action. The LLC retained the same federal employer identification number as the Corporation, and Clint Walker served as the responsible managing officer of both entities.

3

## III.

### THE LLC'S LICENSE

On February 1, 2021, the LLC began its work on the Project. About a week later, the LLC's controller prepared a request for the CSLB to reissue the Corporation's license to the LLC. The LLC submitted the request and related application to the CSLB on March 4, 2021. The CSLB received the application on March 19, 2021.

In April 2021, the CSLB returned the application for corrections and informed the LLC that a license number reissuance could only be approved if the personnel on the Corporation's license matched those on the LLC's application, which was not the case. In May 2021, the CSLB acknowledged receipt of a revised application and again returned it to the LLC for further correction. A week later, the CSLB notified the Corporation that its license would be cancelled in July 2021 because the Corporation had converted to a different entity.

In June 2021, the CSLB notified the LLC that it might be eligible for a contractor's license and instructed the LLC to submit several items, including a bond, insurance, and fingerprints for a background check. The CSLB received the requested bond items a few weeks later along with the insurance documentation and fingerprints in early July 2021.

On July 1, 2021, the Corporation's license was suspended because it had no valid worker's compensation insurance. On July 24, 2021, the Corporation's license was cancelled.

On September 16, 2021, the LLC obtained a license from the CSLB. The LLC continued working on the Project through October 2021.

4

## IV.

### THE LLC'S MECHANIC'S LIEN AND BONDED STOP PAYMENT NOTICE

2525 Main paid over $2 million to the LLC for its work on the Project. In November 2021, after a payment dispute arose between the parties, the LLC recorded a mechanic's lien against the property for $512,982.04 and served a bonded stop payment notice on the construction lender.

## V.

### THE COMPLAINT AND CROSS-COMPLAINT

In February 2022, the LLC filed a complaint against defendants and the construction lender, which is not a party to the instant appeal, seeking to be paid over $500,000 for work, labor, and materials it provided for the Project. The complaint alleged causes of action for: (1) breach of contract; (2) work, labor, and services/agreed price; (3) open book account; (4) account stated; (5) foreclosure of mechanic's lien; and (6) enforcement of bonded stop payment notice.

In March 2022, 2525 Main filed a cross-complaint, asserting causes of action for: (1) breach of contract; and (2) recovery of compensation paid to an unlicensed contractor.

## VI.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In January 2023, defendants moved for summary judgment, or in the alternative, summary adjudication on the complaint and on the cross-complaint's second cause of action for disgorgement. Among other things, they argued the LLC's complaint was barred under section 7031, subdivision (a) because the LLC was not licensed at all times during the construction

work. They also argued the LLC did not qualify for the substantial compliance exception under section 7031, subdivision (e).

In opposition, the LLC argued it was licensed at all times during the Project because it was protected by the 90-day safe harbor rule under section 7141.5. It alternatively claimed there were triable issues of material fact as to whether it substantially complied with the licensing laws. Both parties presented evidence consistent with the facts recited above.

## VII.

### 2525 MAIN'S *LAMBERT* MOTION

In February 2023, 2525 Main filed a motion pursuant to *Lambert v. Superior Court* (1991) 228 Cal.App.3d 383 (*Lambert*) to remove or reduce the LLC's mechanic's lien and stop payment notice. 2525 Main argued, inter alia, the mechanic's lien and stop payment notice were overstated and that the LLC engaged in bad faith tactics.

## VIII.

### THE COURT'S ORDERS AND JUDGMENT

In July 2023, the court granted defendants' summary judgment motion, holding the complaint was barred under section 7031, subdivision (a) because the LLC was not properly licensed as a limited liability company when the construction work began. According to the court, the LLC did not qualify for protection under the safe harbor rules for license renewals or the statutory substantial compliance doctrine. The court also granted summary adjudication on the cross-complaint's second cause of action for disgorgement of over $2 million paid to the LLC.

In September 2023, the court granted 2525 Main's *Lambert* motion and released the mechanic's lien as well as the stop payment notice. The court explained it had already determined, on the summary judgment

motion, that the LLC was precluded from recovery under section 7031, subdivision (a).

The court entered judgment for defendants in April 2024 and awarded $2,344,868.53 to 2525 Main for disgorgement under section 7031, subdivision (b). The LLC filed a timely notice of appeal from the judgment.

## DISCUSSION

The LLC contends the court erred by granting summary judgment because (1) the Corporation's license automatically vested in the LLC; (2) even if a lapse of licensure occurred, the LLC qualifies for the substantial compliance exception under section 7031, subdivision (e); and (3) the LLC is protected by the safe harbor rule under section 7141.5.[2] We disagree with the LLC's contentions.

## I.

### STANDARD OF REVIEW

An appellate court reviews a grant of summary judgment de novo, "considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) "[W]e [accordingly] assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment." (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925.) The motion shall be granted if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "There is a triable issue of

_____

[2] The court's ruling on the *Lambert* motion is the subject of a separate appeal.

7

material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

## II.

## APPLICABLE LAW

Section 7031 is part of the Contractors State License Law (CSLL; § 7000 et seq.) which "imposes strict and harsh penalties for a contractor's failure to maintain proper licensure." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 418 (*MW Erectors*).) Under section 7031, subdivision (a), a contractor who was not "duly licensed . . . *at all times* during the performance of" its contracting work cannot bring an action to collect compensation for *any* of its work, including work performed while licensed. (Italics added; see also *Judicial Council of California v. Jacobs Facilities, Inc.* (2015) 239 Cal.App.4th 882, 896 (*Jacobs*).) A person using an unlicensed contractor's services also may bring an action to disgorge all compensation paid to the unlicensed contractor for the entire project. (§ 7031, subd. (b).) If the fact of licensure is controverted, the burden rests on the licensee to prove proper licensure by producing a verified certificate of licensure from the CSLB establishing it was licensed at all times during performance of the contract. (*Id.*, subd. (d).)

In the event of a violation of the CSLL, a contractor can retain compensation only if it complies with section 7031, subdivision (e)—the substantial compliance exception. The exception requires proof of substantial compliance with licensure requirements. (§ 7031, subd. (e).)

"The obvious statutory intent [of section 7031] is to discourage persons who have failed to comply with the licensing law from offering or

8

providing their unlicensed services for pay." (*Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995.) "Because of the strength and clarity of this policy, it is well settled that section 7031 applies despite injustice to the unlicensed contractor. 'Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties . . . .*'" (*Ibid.*) The result is "a stiff all-or-nothing penalty for unlicensed work" (*MW Erectors, supra*, 36 Cal.4th at p. 426), and the statute itself specifies that it applies "regardless of the merits of the cause of action brought by" the plaintiff (§ 7031, subd. (a)).

III.

LICENSURE DURING A BUSINESS CONVERSION

Here, the LLC worked on the Project from February 2021 to October 2021, and it received a license from the CSLB in September 2021. Despite the delay in licensure, the LLC argues it can rely on the license held by the Corporation because the LLC and the Corporation are the same entity. In the LLC's view, the Corporation merely converted to a limited liability company so it remained the same legal entity for licensure purposes. Citing Corporations Code section 1158, which the LLC did not raise at summary judgment, the LLC maintains all property, including any contractor's licenses, vested in the LLC when the California limited liability company filed a certificate of conversion. (See Corp. Code, § 1158, subd. (b)(1) [upon conversion, all rights and property of a converting entity vest in the converted entity].) The LLC further relies on *E.J. Franks Construction, Inc. v. Sahota* (2014) 226 Cal.App.4th 1123 (*Franks*) to argue that section 7031 does not apply when an entity undergoes a business conversion.

Defendants disagree, asserting the Corporation's license did not carry over to the LLC. In their view, a CSLB license is not transferrable property under Corporations Code section 1158, and the LLC was required to obtain a new license. Even assuming a CSLB license is transferable, defendants argue the LLC could not count on the Corporation's license because the LLC did not provide a $100,000 bond pursuant to section 7071.6.5. Relying on *Jacobs, supra*, 239 Cal.App.4th 882, which the trial court found persuasive, defendants also contend an entity still has to comply with the CSLL during a corporate reorganization.

We first turn to the two cases central to the parties' arguments: *Franks*, which the LLC contends is controlling, and *Jacobs*, which defendants and the trial court referenced. In *Franks*, the court affirmed a judgment awarding damages to a contractor whose business converted from a sole proprietorship to a corporation during construction. (*Franks, supra*, 226 Cal.App.4th at pp. 1129, 1131.) The court held section 7031 did not bar recovery because the contractor was properly licensed at all times—first as a sole proprietor and later as a corporation after the same license was reissued to the corporation. (*Id.* at pp. 1128–1129.) The licensed sole proprietor started the work, and the corporation "merely continued the work" once it was licensed. (*Id.* at p. 1130.) The court distinguished cases involving unlicensed contractors or lapses in licensure, emphasizing that section 7031 is not intended to deter licensed contractors from lawfully changing their business structures. (*Id.* at p. 1129.)

In *Jacobs*, a licensed corporate subsidiary began work on a project, but during the work, its parent company transferred employees to a different subsidiary without the counterparty's consent. (*Jacobs*, 239 Cal.App.4th at pp. 889, 902.) The parent company allowed the original

10

subsidiary's license to lapse while the new subsidiary obtained its own contractor's license. (*Id.* at p. 889.) Despite the lapse of license, the original (now unlicensed) subsidiary remained the contracting party. (*Ibid.*) Given these facts, the court held the original subsidiary violated the CSLL and remanded for a substantial compliance hearing pursuant to section 7031, subdivision (e). (*Ibid.*) In reaching this conclusion, the court distinguished *Franks*: "Unlike the hand off of both license and business form that occurred in *Franks,* Jacobs maintained two separate business entities and two licenses for a significant period of time. The continuity of license and business entity that was central to the rationale of *Franks* was not present here." (*Id.* at p. 899.) The court acknowledged section 7031 likely was not intended to penalize business form changes, but it found no statutory basis to excuse violations of the CSLL arising from such changes. (*Id.* at p. 898.)

Here, the instant action does not fall squarely within the factual frameworks of either *Franks* or *Jacobs*. Unlike *Jacobs*, two distinct entities did not work on the Project. And unlike *Franks*, there was no seamless transfer of the contractor's license from one entity to another. Instead, the LLC alone worked on the Project from the start and received its contractor's license near the end of that work in September 2021. The Corporation's license was never reissued to the LLC. Indeed, the CLSB informed the LLC that a license number reissuance was not possible because the personnel on the Corporation's license did not match the personnel on the LLC's application.

Even assuming, arguendo, a transfer of license occurred under the logic in *Franks* or under Corporations Code section 1158, the undisputed evidence shows neither the LLC nor the Corporation held a valid contractor's license between July 1, 2021, and September 16, 2021. This lapse, though

11

temporary, is dispositive. Even a brief interruption in licensure bars a contractor from recovering compensation for his or her work. (*MW Erectors, supra*, 36 Cal.4th at p. 426 [noting the "Legislature's obvious intent to impose a stiff all-or-nothing penalty" barring "*all* recovery . . . if unlicensed *at any time*"]; *Alatriste v. Cesar's Exterior Designs, Inc.* (2010) 183 Cal.App.4th 656, 667–672.)

Because the LLC worked on the Project during an unlicensed period, it violated the CSLL. (§ 7028, subd. (a)(1).) To avoid the mandatory forfeiture of its compensation, the LLC must satisfy the terms of section 7031, subdivision (e) as discussed below.

## IV.

### SUBSTANTIAL COMPLIANCE EXCEPTION

Despite the time gap between the expiration of the Corporation's license in July 2021 and the issuance of the LLC's license in September 2021, the LLC argues it qualifies for the substantial compliance exception. To the contrary, there are no triable issues concerning substantial compliance.

### A. Applicable Law

As noted *ante*, section 7031, subdivision (e) permits a contractor to retain compensation if there is substantial compliance with the licensure requirements. The statute provides: "[T]he court may determine that there has been substantial compliance with licensure requirements under this section if it is shown at an evidentiary hearing that the person who engaged in the business or acted in the capacity of a contractor (1) had been duly licensed as a contractor in this state prior to the performance of the act or contract, (2) acted reasonably and in good faith to maintain proper licensure,

12

and (3) acted promptly and in good faith to remedy the failure to comply with the licensure requirements upon learning of the failure." (§ 7031, subd. (e).)

*B. Analysis*

The trial court focused on the first element of the substantial compliance exception, but we may affirm on any ground asserted in the trial court. (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 637.) Assuming, without deciding, the LLC was licensed at the start of the Project via the Corporation's license, there is no triable issue of material fact on the second element: whether the LLC "acted reasonably and in good faith to maintain proper licensure." (§ 7031, subd. (e).) The substantial compliance exception "is 'extremely narrow' and applies 'only where a contractor was without a license owing to circumstances truly beyond his control.'" (*Pacific Caisson & Shoring, Inc. v. Bernards Bros., Inc.* (2015) 236 Cal.App.4th 1246, 1257.) Here, the exception does not apply because the evidence establishes that delays in submitting a license application and maintaining continuous licensure were within the LLC's control.

It is undisputed the business conversion process began in December 2020, but the CSLB did not receive the LLC's license application until March 19, 2021. The LLC claims it initiated the licensing process in February 2021 when it prepared a request for license number reissuance. Even so, the LLC waited nearly a month after its January 11, 2021 formation to submit a request for license number reissuance. There also is no evidence that the LLC contacted the CSLB to ensure a proper transition of licensure or that it sought pre-approval or advice from the CSLB to preserve licensure continuity.

Relying on statutory "grace periods" afforded to contractors in other contexts, the LLC emphasizes it submitted its application for licensure

13

within 90 days of conversion and thereafter worked with the CSLB to correct its application. But those 90-day provisions address different circumstances, not the loss of licensure resulting from a business conversion. (§§ 7076 [notice or request for license continuance required within 90 days after a death, disassociation, dissolution, or merger], 7083 [licensee must notify registrar of changes in recorded information, including business address, personnel, or business name, within 90 days], 7141.5 [retroactive renewal of license if licensee submits renewal application and pays required fees within 90 days of license expiration].)

Broader licensing issues also undercut any claim of good faith or diligence. Section 7071.6.5, subdivision (a) provides: "[A]s a condition precedent to the issuance, reissuance, reinstatement, reactivation, renewal, or continued valid use of a limited liability company license, . . . the applicant or licensee [must] file or have on file a surety bond in the sum of one hundred thousand dollars ($100,000)." The CSLB received the LLC's bond in June 2021, over four months after the LLC commenced work on the Project. The Corporation's license also was suspended on July 1, 2021 for failure to maintain valid worker's compensation insurance, but the LLC continued to work on the Project without any license in effect.[3] These facts demonstrate the Corporation and the LLC's failure to appreciate the consequences of a change in business forms. The resulting missteps were *not* "'truly beyond [the LLC's] control.'" (*Pacific Caisson & Shoring, Inc. v. Bernards Bros., Inc.,* *supra*, 236 Cal.App.4th at p. 1257.)

---

[3] The LLC's worker's compensation insurance was effective December 2020.

14

The LLC attributes the delay in receiving its own license to the COVID-19 pandemic. The record does not support that contention. A CSLB representative generally agreed the COVID-19 pandemic impacted the CSLB's processing of applications, but he had no specific knowledge about the processing of the LLC's application. He also did not dispute the processing of the LLC's license was unaffected by general staffing shortages. The representative further testified each application was unique and could take a few weeks to a few months to process. The CSLB's handling of the LLC's application fell within that range. It received the LLC's application around two weeks after it was submitted, returned the initial submission for correction about a month after receipt, acknowledged a revised version in May 2021, requested additional materials by June 2021, received the requested materials by July 2021, and issued the LLC's license in September 2021. These ordinary response times undercut any claim that COVID-related delays were responsible for the gap in licensure.

The CSLB representative also noted fingerprint processing at the Department of Justice (DOJ) was sometimes delayed. But he did not testify that such delays affected the LLC's application, and there is no evidence that COVID-related DOJ processing times contributed to the gap in licensure. The LLC relies on the declaration of its controller who lacked personal knowledge to testify about DOJ processing times or their causes. (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761 [declarations in summary judgment must be based on personal knowledge].)

C. *Writ of Attachment Ruling*

The LLC next contends the trial court should not have ruled on the summary judgment motion because it already had determined the LLC substantially complied with licensure requirements when it denied 2525

15

Main's prior application for a writ of attachment. Not so. A ruling on a prejudgment attachment is a provisional determination based on "probable validity," not a final adjudication on the merits. (Code Civ. Proc., § 484.090, subd. (a)(2).) And Code of Civil Procedure section 484.100 makes clear that determinations under the writ of attachment chapter "shall have no effect on the determination of any issues in the action other than issues relevant to proceedings under this chapter" and "shall not be given in evidence nor referred to at the trial of any such action." In other words, the court's prior ruling did not establish substantial compliance as a matter of law or preclude the court from reaching a different conclusion on a more complete summary judgment record.

## D. Evidentiary Hearing

The LLC further notes it requested an evidentiary hearing at the summary judgment hearing and argues the court erred by not granting its request before issuing the summary judgment ruling. (§ 7031, subd. (e) [a "court may determine . . . there has been substantial compliance . . . if it is shown at an evidentiary hearing . . . ."].) We are not persuaded. The statute does not guarantee an evidentiary hearing where, as here, the undisputed facts show the substantial compliance exception cannot be met. (Code Civ. Proc., § 437c, subd. (c); see *Opp v. St. Paul Fire & Marine Ins. Co.* (2007) 154 Cal.App.4th 71, 76–79 [substantial compliance decided in summary judgment context]; *Alatriste v. Cesar's Exterior Designs, Inc., supra,* 183 Cal.App.4th at pp. 669–672 [substantial compliance decided in summary adjudication context].)

For the foregoing reasons, the LLC cannot establish the substantial compliance exception. While we recognize the result may appear harsh given the LLC's work on the Project, courts may not resort to equitable

16

considerations to soften the statute's effect. (*Panterra GP, Inc. v. Superior Court of Kern County* (2022) 74 Cal.App.5th 697, 707 ["equitable theories cannot overcome a failure to have a proper license"]; *MW Erectors, supra*, 36 Cal.4th at p. 424 ["[s]ection 7031[, subdivision ](a) will be applied, regardless of equitable considerations, even when the person for whom the work was performed has taken calculated advantage of the contractor's lack of licensure"].) The trial court therefore correctly concluded the exception did not apply.

## V.

### SAFE HARBOR

The LLC alternatively argues there are triable issues of material fact as to whether it is protected by the safe harbor rule under section 7141.5. We disagree.

Section 7141.5 provides: "The registrar shall grant the retroactive renewal of a license if, within 90 days of the expiration of the license, the otherwise eligible licensee submits a completed application for renewal on a form prescribed by the registrar, and pays the appropriate renewal fee and delinquency fee prescribed by this chapter. For the purposes of this section, an application shall be deemed submitted if it is delivered to the board's headquarters or postmarked within 90 days of the expiration of the license."

By its plain terms, the statute applies only when a contractor seeks to renew an existing license that has expired. It does not authorize the issuance of a new license or excuse a lapse in licensure due to a change in business form. Here, the LLC did not submit an application for renewal or seek to renew an expired license. Instead, the LLC requested the Corporation's license be reissued to it and subsequently requested its own

17

license based on feedback from the CSLB. Section 7141.5 therefore has no application to the instant matter.

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs incurred on appeal.

SANCHEZ, J.

WE CONCUR:

MOTOIKE, ACTING P. J.

MOORE, J.